UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOFT HOLDINGS, LLC

      Plaintiff,

-vs-

USC 28 N SAGINAW, LLC,
URBAN STANDARD MANAGER, LP,
and URBAN STANDARD CAPITAL, LLC
d/b/a URBAN STANDARD CAPITAL
d/b/a USC

      Collectively, Defendants.

Civil Action No. _____

Honorable _____

ISHBIA & GAGLEARD, P.C.
Attorneys and Counselors
251 Merrill St., Suite 212
Birmingham, MI 48009

## DEFENDANTS NOTICE OF REMOVAL

    NOW COME Defendant USC 28 N Saginaw, LLC, Defendant Urban Standard Manager, LP and Defendant Urban Standard Capital, LLC (collectively the "*Defendants*") by and through their counsel, Ishbia & Gagleard, P.C., and submit this Notice of Removal under 28 U.S.C. §§ 1332, 1441, and 1446 to remove the above-entitled action from the Oakland County Circuit Court, Michigan, which is pending under the cause number 2023-203279-CB (the State Court Action), to the United States District Court for the Eastern District of Michigan, Southern Division. In support of this Notice of Removal, the Defendants state as follows:

### I.   Introduction

1. On October 16, 2023, Plaintiff, Loft Holdings, LLC. ("*Loft*"), filed its Complaint against the Defendants in the Oakland County Circuit Court ("*Complaint*").

2. On October 24, 2023, service of the Summonses and Complaint on the Defendants was made, by acceptance of service, with a copy of the Summonses and Complaint attached as **Exhibit 1**.

3. The Defendants are timely filing this Notice of Removal within 30 days of service in accordance with 28 U.S.C. §1446(b).

4. The State Court Action alleges, in its Count I, that the Defendants breached a contract with Loft, and breached an implied covenant of good faith and fair dealings, in connection with Lofts' application for a Bridge Loan, and demand for return of its deposit, when the Bridge Loan did not close, claiming damages in excess of $50,000.00. See Compl., ¶¶73-78.

5. The State Court Action alleges, in its Count II, that the Defendants made a specific promise in connection with Lofts' application for a Bridge Loan, and demand for return of its deposit, when the Bridge Loan did not close, claiming special damages in excess of $230,136.96. See Compl., ¶¶80-86.

6. The State Court Action alleges, in its Count III, that Loft detrimentally relied on Defendants alleged explicit promises in connection with Lofts' application for a Bridge Loan, and demand for return of its deposit, when the Bridge Loan did not close, claiming damages in excess of $250,000.00. See Compl., ¶¶88-95.

7. The State Court Action alleges, in its Count IV, a claim for Statutory Conversion under the terms of MCL 600.2919a, in connection with Lofts' application for a Bridge Loan, and demand for return of its deposit, when the Bridge Loan did not close, claiming trebled damages in excess of $150,000.00. See Compl., ¶¶97-101.

**II.    The Court Has Subject Matter Jurisdiction Over This Action Under 28 USC § 1332**

8. Under 28 U.S.C. § 1332, this Court has original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between the citizens of different states. Those jurisdictional prerequisites are met here.

ISHBIA & GAGLEARD, P.C.
Attorneys and Counselors
251 Merrill St., Suite 212
Birmingham, MI 48009

2

**A. Complete diversity of citizenship exists.**

9. There is complete diversity between the parties.

10. Loft is a Michigan limited liability company with its principal place of business in Michigan. See Compl., ¶1. Therefore, Loft is a citizen of Michigan. See 28 U.S.C. § 1332(c)(1).

11. Defendant USC 28 N Saginaw, LLC, is a New York limited liability company, See Compl., ¶2, with its principal place of business located in the state of New York. Therefore, Defendant USC 28 N Saginaw, LLC is a citizen of New York. See 28 U.S.C. § 1332(c)(1).

12. Defendant Urban Standard Manager, LP, is a Delaware limited partnership, See Compl., ¶3, with its principal place of business located in the state of New York. Therefore, Defendant Urban Standard Manager, LP is a citizen of Delaware and/or New York. See 28 U.S.C. § 1332(c)(1).

13. Defendant Urban Standard Capital, LLC is a Delaware limited liability company, See Compl., ¶5, with its principal place of business located in the state of New York. Therefore, Defendant Urban Standard Capital, LLC is a citizen of Delaware and/or New York. See 28 U.S.C. § 1332(c)(1).

14. Accordingly, this action involves "citizens of different states," 28 U.S.C. § 1332(a)(1)-(2) and meets the requirement of complete diversity of citizenship among the parties.

**B. The amount in controversy exceeds $75,000.**

15. Loft alleges that it was damaged in the principal amount of at least:

    A. $50,000.00 as actual damages under Count I – Breach of Contract.  See Compl., Prayer for Relief, ¶1.

    B. $230,136.96 as special damages under Count II – Promissory Estoppel. See Compl., Prayer for Relief, ¶2.

ISHBIA & GAGLEARD, P.C.
Attorneys and Counselors
251 Merrill St., Suite 212
Birmingham, MI 48009

ISHBIA & GAGLEARD, P.C.
Attorneys and Counselors
251 Merrill St., Suite 212
Birmingham, MI 48009

C. $250,000.00 as reputational damages and other actual damages under Count III – Detrimental Reliance. See Compl., Prayer for Relief, ¶3.

D. $150,000.00 as treble damages under Count IV – Statutory Conversion. See Compl., Prayer for Relief, ¶4.

Accordingly, the amount-in-controversy requirement for diversity jurisdiction is satisfied because "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a).

## III. Removal Is Timely

16. This Notice of Removal is timely because it has been filed within 30 days after Defendants' receipt of the Complaint on October 24, 2023. 28 U.S.C. § 1446(b)(1).

## IV. Procedural Requirements for Removal Are Satisfied

17. Attached to this Notice, as **Exhibit 2,** are copies of all process, pleadings, and orders served on the Defendants in the State Court Action, in addition to the Complaint which is included in **Exhibit 1**.

18. This is the proper Court for the removal of this case because the United States District Court for the Eastern District of Michigan, Southern Division is the federal judicial district encompassing the Oakland County Circuit Court in the State of Michigan. See 28 U.S.C. § 102(a)(1).

19. This notice will be served on Orleans, through its counsel of record, and will be filed promptly with the Oakland County Circuit Court. See 28 U.S.C. § 1446(d).

## V. Conclusion

20. For these reasons, this Court has diversity jurisdiction over this case under 28 U.S.C. § 1332 and removal is proper under 28 U.S.C. § 1446(b).

## VI. Jury Demand

21. Defendants demand a trial by jury on all issues so triable.

WHEREFORE, Defendants remove this action from the Oakland County Circuit Court of Michigan to the United States District Court for the Eastern District of Michigan, under 28 U.S.C. §§ 1332, 1441, and 1446.

Respectfully submitted,

ISHBIA & GAGLEARD, P.C.

/s/ *Philip Cwagenberg*
Philip Cwagenberg (P36246)
Attorney for Defendants
251 E. Merrill St., Suite 212
Birmingham, MI 48009
(248) 647-8590
pc@iglawfirm.com
Dated: November 15, 2023

**ISHBIA & GAGLEARD, P.C.**
Attorneys and Counselors
251 Merrill St., Suite 212
Birmingham, MI 48009

**EXHIBIT 1**

**SUMMONS AND COMPLAINT**

ISHBIA & GAGLEARD, P.C.
Attorneys and Counselors
251 Merrill St., Suite 212
Birmingham, MI 48009

This case has been designated as an eFiling case, for more information please visit www.oakgov.com/efiling.

Case 2:23-cv-12904-SKD-CI ECF No. 1, PageID.7 Filed 11/15/23 Page 7 of 53

Original – Court

FILED    Received for Filing    Oakland County Clerk    10/16/2023 4:39 PM

| **STATE OF MICHIGAN**<br>**6TH JUDICIAL CIRCUIT**<br>**COUNTY OF OAKLAND** | **NOTICE OF ASSIGNMENT TO THE BUSINESS COURT** | **CASE NO.**<br>2023-203279-CB<br>JUDGE MICHAEL WARREN |
|---|---|---|

| **Court address**<br>1200 N Telegraph Rd    Pontiac, MI  48341 | | **Court telephone no.**<br>248-858-0345 |

| Plaintiff's name(s), address(es), and telephone number(s)<br>Loft Holdings, LLC<br><br>c/o Undersigned Counsel | v | Defendant's name(s), address(es), and telephone number(s)<br>(1) Urban Standard Capital, LLC D/B/A "Urban Standard Capital" AND D/B/A "USC"; (2) Urban Standard, LLC;<br>(3) Urban Standard Manager, LP;<br>(4) USC 28 N Saginaw, LLC |
|---|---|---|
| Plaintiff's attorney, bar no., address, telephone no., and email address<br>HANNA & JARBO, PLLC<br>Dalen P. Hanna (P81533)<br>33717 Woodward Ave., No. 560, Birmingham, MI 48009<br>contact@hannajarbo.com I (248) 209-6486 | | Defendant's attorney, bar no., address, telephone no., and email address |

The ☒ Plaintiff ☐ Defendant  requests assignment of the above captioned matter to the Business Court.  The case qualifies for the Business Court and the matter should be identified as Business Court eligible pursuant to MCL 600.8031, MCL 600.8035, and LAO 2018-06 as indicated below. (Check all that apply.)

The case qualifies as business or commercial dispute as defined by MCR 2.112(O) and MCL 600.8031(1)(c)(i)-(iii) as:

☒ All of the parties are business enterprises;

☐ One or more of the parties is a business enterprise and the other parties are its or their present or former owners, managers, shareholders, members of a limited liability company or similar business organization, directors, officers, agents, employees, suppliers, guarantors of a commercial loan, or competitors, and the claims arise out of those relationships;

☐ One of the parties is a nonprofit organization and the claims arise out of that party's organizational structure, governance, or finances.

Pursuant to MCL 600.8031(2) the business or commercial dispute includes, but is not limited to, those involving:

☐ The sale, merger, purchase, combination, dissolution, liquidation, organizational structure, governance, or finance of a business enterprise;

☐ Information technology, software, or website development, maintenance or hosting;

☐ The internal organization of business entities and the rights or obligations of shareholders, partners, members, owners, officers, directors, or managers;

☒ Contractual agreements or other business dealings, including licensing, trade secret, intellectual property, antitrust, securities, noncompete, nonsolicitation, and confidentiality agreements if all available administrative remedies are completely exhausted, including, but not limited to, alternative dispute resolution processes prescribed in the agreements;

☐ Commercial transactions, including commercial bank transactions;

☐ Business or commercial insurance policies; and/or

☒ Commercial real property.

☐ Other:(Please explain)

| 10/16/2023 | /s/ Dalen P. Hanna (P81533) |
|---|---|
| Date | Name |
| | Attorney for:  Plaintiff |

OCBC 01 (7/22)  **NOTICE OF ASSIGNMENT TO THE BUSINESS COURT**

This case has been designated as an eFiling case, for more information please visit www.oakgov.com/efiling.

Approved, SCAO

| | | | |
|---|---|---|---|
| | | Original - Court | 2nd copy - Plaintiff |
| | | 1st copy - Defendant | 3rd copy - Return |

| STATE OF MICHIGAN | | CASE NO. |
|---|---|---|
| **6TH** JUDICIAL DISTRICT JUDICIAL CIRCUIT COUNTY | **SUMMONS** | 2023 2023-203279-CB -CB  JUDGE MICHAEL WARREN |

**Court address**

[CC-6TH] 1200 NORTH TELEGRAPH ROAD | PONTIAC | MICHIGAN 48340

**Court telephone no.**
(248) 858-0344

| Plaintiff's name, address, and telephone no. | | Defendant's name, address, and telephone no. |
|---|---|---|
| Loft Holdings, LLC <br><br> c/o Undersigned Counsel | v | Urban Standard Capital, LLC D/B/A "Urban Standard Capital" AND D/B/A "USC" <br> (service via counsel) |

**Plaintiff's attorney, bar no., address, and telephone no.**

HANNA & JARBO, PLLC
Dalen P. Hanna (P81533)
33717 Woodward Ave., No. 560, Birmingham, MI 48009
contact@hannajarbo.com | (248) 209-6486

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in ☐ this court, ☐ _____ Court, where it was given case number _____ and assigned to Judge _____

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.

**SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside of Michigan).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date* | Court clerk |
|---|---|---|
| 10/17/2023 | 01/16/2024 | Lisa Brown |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01   (3/23)   **SUMMONS**

MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

10/16/2023 4:39 PM    Oakland County Clerk    Received for Filing    FILED

This case has been designated as an eFiling case, for more information please visit www.oakgov.com/efiling.

Approved, SCAO

| | | Original - Court | 2nd copy - Plaintiff |
|---|---|---|---|
| | | 1st copy - Defendant | 3rd copy - Return |

| STATE OF MICHIGAN<br>6TH JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY | SUMMONS | CASE NO.<br>2023-203279-CB -CB<br>JUDGE MICHAEL WARREN |
|---|---|---|

| Court address | Court telephone no. |
|---|---|
| [CC-6TH] 1200 NORTH TELEGRAPH ROAD | PONTIAC | MICHIGAN 48340 | (248) 858-0344 |

| Plaintiff's name, address, and telephone no.<br>Loft Holdings, LLC<br><br>c/o Undersigned Counsel | v | Defendant's name, address, and telephone no.<br>Urban Standard, LLC<br>(service via counsel) |
|---|---|---|

Plaintiff's attorney, bar no., address, and telephone no.
HANNA & JARBO, PLLC
Dalen P. Hanna (P81533)
33717 Woodward Ave., No. 560, Birmingham, MI 48009
contact@hannajarbo.com | (248) 209-6486

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (MC 21). The summons section will be completed by the court clerk.

### Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

### Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in ☐ this court, ☐ _____ Court, where it was given case number _____ and assigned to Judge _____

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.    **SUMMONS**

**NOTICE TO THE DEFENDANT**: In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside of Michigan).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>10/17/2023 | Expiration date*<br>01/16/2024 | Court clerk<br>Lisa Brown |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01   (3/23)   **SUMMONS**                                    MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

This case has been designated as an eFiling case, for more information please visit www.oakgov.com/efiling.

# STATE OF MICHIGAN
## IN THE 6TH CIRCUIT COURT FOR THE COUNTY OF OAKLAND

LOFT HOLDINGS, LLC

      Plaintiff,

-vs-

USC 28 N SAGINAW, LLC,
URBAN STANDARD MANAGER, LP,
URBAN STANDARD, LLC, and
URBAN STANDARD CAPITAL, LLC
d/b/a URBAN STANDARD CAPITAL
d/b/a USC

      Collectively, Defendants.

Case No: 2023-      -CB
Hon.  2023-203279-CB

JUDGE MICHAEL WARREN

HANNA & JARBO, PLLC
Dalen P. Hanna (P81533)
Attorneys for Plaintiff
33717 Woodward Avenue, Suite 560
Birmingham, Michigan 48009
contact@hannajarbo.com
(248) 209-6486

*Pursuant to MCR 2.113(C)(2)(a) there is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the complaint. Furthermore, and pursuant to MCR 2.112(O), this case meets the statutory requirements to be assigned to the Business Court because one or more of the parties involved in this case are business enterprises.*

## COMPLAINT

NOW COMES Plaintiff, LOFT HOLDINGS, LLC ("Plaintiff"), by and through its attorneys, Hanna & Jarbo, PLLC, and for its complaint against Defendants USC 28 N SAGINAW, LLC; URBAN STANDARD, LLC; URBAN STANDARD MANAGER, LP; and URBAN STANDARD CAPITAL, LLC all either New York or Delaware Limited Partnerships or Limited Liability Companies doing business under the assumed names of, or otherwise known as, USC and/or Urban Standard Capital; collectively operating as a *alternative* commercial lender (collectively, the "Defendants"), states as follows:

1

FILED   Received for Filing   Oakland County Clerk   10/16/2023 4:39 PM

33717 WOODWARD AVENUE, SUITE 560, BIRMINGHAM, MICHIGAN 48009 PHONE: (248) 209-6486 FAX: (202) 478-5005 WWW.HANNAJARBO.COM
HANNA & JARBO, PLLC

## PARTIES AND JURISDICTION

1.    Plaintiff Loft Holdings, LLC is a Michigan Limited Liability Company located in Oakland County.

2.    Defendant USC 28 N Saginaw, LLC, is a New York Limited Liability Company, established for the sole purpose of the future business dealings by and between the Parties to this action. **EXHIBIT A**

3.    To the best information, belief, and knowledge at the time of filing this action, Defendant Urban Standard Manager, LP, is either a Delaware Limited Partnership operating as a foreign entity doing business in New York, or a New York Limited Partnership, or both, or neither.

4.    To the best information, belief, and knowledge at the time of filing this action, Defendant Urban Standard, LLC, is either a Delaware Limited Liability Company operating as a foreign entity doing business in New York, or a New York Limited Liability Company, or both, or neither.

5.    To the best information, belief, and knowledge at the time of filing this action, Defendant Urban Standard Capital, LLC, is either a Delaware Limited Liability Company operating as a foreign entity doing business in New York, or a New York Limited Liability Company, or both, or neither.

6.    To the best information, belief, and knowledge at the time of filing this action, all Defendants are related entities, with the same or common ownership.

7.    This is an action for damages that are within the jurisdictional limit of this Honorable Court, exclusive of costs.

8.    In addition, jurisdiction is proper before this Honorable Court due to the equitable nature of the remedies sought.

## VENUE

9.    Venue for this action is proper in this Honorable Court because all events leading to the claims made herein occurred within Oakland County, regarding real property located within Oakland County, hence establishing it as the appropriate venue.

10.   In addition, all Defendants have purposefully associated themselves with this jurisdiction through the business operations, and other substantial actions which gave rise to the claims made herein, warranting the selection of Oakland County for the resolution of this matter.

HANNA & JARBO, PLLC
33717 WOODWARD AVENUE, SUITE 560, BIRMINGHAM, MICHIGAN 48009 PHONE: (248) 209-6486 FAX: (202) 478-5005 WWW.HANNAJARBO.COM

HANNA & JARBO, PLLC

33717 WOODWARD AVENUE, SUITE 560, BIRMINGHAM, MICHIGAN 48009 PHONE: (248) 209-6486 FAX: (202) 478-5005 WWW.HANNAJARBO.COM

## SYNOPSIS

This is an action by an applicant borrower (a real estate developer) against its prospective lender regarding a commercial construction loan which was never consummated. What gave rise to this action is the conspiratorial and malicious actions of the prospective lender whom – *as is now clear as day* – never genuinely intended on moving forward with the contemplated loan.

At the outset, the lender provided clear and unambiguous terms in the form of a formal Term Sheet (as defined herein), which both parties executed, and which the lender continually and habitually referenced throughout the duration of the underwriting process. Upon execution of the Term Sheet the lender required a $50,000 good faith deposit, which the borrower paid.

Notwithstanding the applicant borrower's good faith dealings and reliance on the loan terms and other promises made by the lender, the lender made eleventh-hour material and surprise changes to the terms which it knew, *with certainty*, the borrower would be unable to meet. The loan never closed and now the borrower is forced to bring this action to recover its $50,000 good faith deposit which the lender is refusing to return despite having no legal reason to keep it, and for other damages stemming from its actions.

## GENERAL ALLEGATIONS
## AND BACKGROUND FACTS

11. Plaintiff is a single purpose entity which owns a commercial property located at 28 N. Saginaw Street, in Pontiac, Michigan (the "Property").

12. Blackacre Management, LLC, a Michigan based real estate development and management company, a non-party to this action (the "Developer") is in the process of redeveloping the Property into a mixed-use residential and commercial development (the "Project").

13. As a given prerequisite for the Project, like any other, the Developer has been in the market for a construction loan for approximately $9.25~9.5m dollars.

14. During this financing phase, Developer was introduced to Defendant as a prospective lender by a third-party commercial lending brokerage, also a non-party to this action.

15. Defendants Urban Standard, LLC, Urban Standard Manager, LP and/or Urban Standard Capital, LLC, and/or through the use of single purpose entity USC 28 N Saginaw, LLC (collectively, "Defendant," or "Lender") operate and market themselves as an alternative "friendly" bridge-loan, flex-loan, and/or debt fund lender with the capability to provide quick, flexible, and fair loan terms.

16.    At the very early stages of the Lender-Developer relationship, the Developer (through its loan broker, and directly) provided the Lender with an extensive and well-prepared underwriting package which included all of the details of the Project, specifically those items needed by any lender to assess the Project's viability, its construction budget, proforma, history of the Developer, and all necessary items to prepare a term sheet.

17.    Enclosed with the original underwriting package were ALL of the financial items needed to assess the Project capital position, and that of the co-guarantors, and the Developer; put simply, the Defendant had certain knowledge of the cash-position of the borrower/guarantors.

18.    For judicial notice purposes, in the commercial lending business, a *Term-Sheet* is the equivalent of a non-binding Letter of Intent, better defined as follows:

>    In the context of commercial real estate financing, a term sheet is a concise document outlining the key terms and conditions of a potential loan or financing arrangement. It serves as a preliminary agreement that **summarizes the basic elements of the deal** before a more comprehensive and legally binding loan agreement is drafted. The term sheet typically includes essential details such as loan amount, interest rate, repayment terms, collateral requirements, and any special conditions or covenants agreed upon by the parties involved. It provides a framework for further negotiations and due diligence, allowing both the lender and borrower to assess the feasibility and terms of the proposed financing arrangement before moving forward with a formal agreement.

19.    While a term sheet is generally nonbinding in and of itself as a contract, it *does* serve as a legally sufficient memorialization of each of the parties' intentions and expectations and further serves as a basis for enforcement of reliance actions, such as those in this action.

20.    On or about August 21, 2023, Defendant provided Plaintiff with a final copy of a term sheet which, of which several previous versions had been circulated, modified, and heavily negotiated before mutual execution (the "Term Sheet"). **EXHIBIT B**

21.    Upon mutual execution of the Term Sheet, Plaintiff was instructed and in fact wired $50,000 as a good faith deposit which was to be used as follows, per the Term Sheet,

>    "Upon acceptance of this term sheet, Borrower shall deposit $50,000 in the form of a wire transfer.
>
>    The Good Faith Deposit is inclusive of a $10.000 non- refundable Underwriting Fee (the "Underwriting Fee). Any amounts above Lender's out-of-pocket expenses, including Underwriting Fee, shall be applied

HANNA & JARBO, PLLC

33717 WOODWARD AVENUE, SUITE 560, BIRMINGHAM, MICHIGAN 48009 PHONE: (248) 209-6486 FAX: (202) 478-5005 WWW.HANNAJARBO.COM

toward closing costs, or, in the event the Loan does not close, returned to Borrower less the Underwriting Fee and Break Up fee, if applicable.

Upon request, Borrower will immediately reimburse Lender for all such costs, including internal originating and underwriting, and third-party reports which may exceed the deposit."

**EXHIBIT C**

22. The final Term Sheet was then used to prepare for a closing which was then-tentatively set for September 15, 2023.

23. The Term Sheet provided that Defendant would loan only $8m - well-short of the $9.25~9.5m dollars being sought by the Developer.

24. In addition, the loan terms were far more stringent and somewhat less favorable than a typical lender such as a bank or credit union. For example, the Defendant would be charging a 12.50% interest rate; 4.00% above the then-current WSJ prime rate.

25. However, there were other factors at play for the Developer such as the **short time to close**, the fact that **no money would be due at closing** (commonly referred to as borrowers' equity), and most materially, that Defendant marketed itself as a friendly, flexible lender who would be willing to work with Developer on terms that traditional lender would not.

26. In fact, the first written item on their website states, "We pride ourselves on our transparency in financing deals and quick closings." **EXHIBIT D**

27. **All of these material representations turned out to be wholly and entirely untrue.**

28. In addition, and one of the most important items on the Term Sheet was the Exclusivity requirement which meant that Borrower had to cease any further discussions or solicitations of loans with other prospective lenders. The Term Sheet stated:

> "...EXCLUSIVITY: Borrower and Guarantor hereby expressly agree and acknowledge that (a) Lender is devoting its personnel and financial resources to the consideration of the Loan; (B) in Lender's industry, business opportunities are limited and extremely competitive; (c) compensation to the lender, in the event Borrower obtains financing from a source other than Lender, would be extremely difficult to calculate; (d) Lender cannot, as a result of this underwriting and analysis, commit its resources to other potential transactions and may be deprived of business opportunities thereby; and € Lender may suffer negative impact in the industry in the event the Borrower does not complete this proposed transaction or obtains financing from a competitor of the Lender. Accordingly, **Borrower and Guarantor hereby expressly agree to work solely with Lender to procure the Loan** and agree not to, and will cause

HANNA & JARBO, PLLC

33717 WOODWARD AVENUE, SUITE 560, BIRMINGHAM, MICHIGAN 48009 PHONE: (248) 209-6486 FAX: (202) 478-5005 WWW.HANNAJARBO.COM

HANNA & JARBO, PLLC
33717 WOODWARD AVENUE, SUITE 560, BIRMINGHAM, MICHIGAN 48009 PHONE: (248) 209-6486 FAX: (202) 478-5005 WWW.HANNAJARBO.COM

their principal and affiliates not to, obtain or attempt to arrange financing in connection with the Property with any party other than Lender.[1]"

29. Principally, the Term Sheet had a **Sources & Uses** schedule on the first page.

30. For judicial notice purposes, in the commercial lending business, a project's *Sources & Uses* is a simple debit and credit chart, which must balance, as further defined below:

> In the context of commercial real estate financing, a Sources & Uses chart for a construction project outlines the allocation of funds (the *sources*) and their corresponding expenditures (the *uses*). This is intended to provide a clear financial overview by detailing where the project funding originates, and how it is utilized. For example, a common source is a bank loan, and a common use is the purchase of a property, or the cost of construction.

31. Owner's Equity is a material term on any Sources & Uses chart. Owner's Equity could be cash used in conjunction with a commercial loan, the amount of the equity an owner/developer (appraised value less any debt) of the subject property, or generally *any* money used by the owner/developer of a project which gives the latter, *skin-in-the-deal*.

32. In this case, the Owner's Equity was clearly the value of the Property, less any debt, which this particular Property had none.

33. The Term Sheet provided by the Defendant had a **Sources & Uses** schedule shown below:

**S&U At Closing**

| Sources | |
|---|---|
| Equity | $2,436,592.00 |
| Debt | $8,000,000.00 |
| **Total** | **$10,436,592.00** |
| Uses | |
| Hard Costs* | $7,916,592.00 |
| Soft Costs | $1,000,000.00 |
| Origination Fee | $120,000.00 |
| Interest Reserve | $1,400,000.00 |
| Broker Fee | TBD |
| Title/MRT | TBD |
| Borrower legal | TBD |
| **Total** | **$10,436,592.00** |

*To include a 12.5% contingency between owner / GC

10 %

---
[1] Emphasis added.

34. It is important to highlight that the Defendant represented that it would require Equity of $2,436,592.00. There was no statement ANYWHERE on the Term Sheet that any part of this would have to be in the form of cash at closing.

35. To the contrary, and as is commonly the practice in commercial lending, and as was discussed at length, the Equity that the Borrower was bring to closing was the ownership in the value of the Property.

36. As background, the Property had a then-current market value of approximately $3.25m. This included the actual cost of the land, the building (a 15-story historic office tower), the improvements up until that point, the holdings costs, and some pre-construction staging and investments that the Developer had completed.

37. There was also no debt on the Property.

38. The ***unambiguous terms*** from the Term Sheet stated that the Defendant would loan to the Project, "The Lessor of $8,000,000 or 60% of appraised value with cost to complete held back and funded through requisitions."

39. Throughout five (5) pages of a lender-drafted Term Sheet, one which was heavily negotiated, there was not a single word of the Borrower having to bring any cash-to-close.

40. The Term Sheet stated only that the Defendant would provide a loan equal to the *lessor* of either (a) $8m -OR- a then-unknown figure equal to (b) 60% of the Property's appraised value at the completion of the redevelopment.

41. Hence, for the purposes of obtaining the maximum loan amount per the Term Sheet (i.e. $8m), the Property's (AS-IS) value, PLUS future improvements, **would need to obtain an (AS-COMPLETE) appraised value of at least ~$13.40m**; which it more than did.

42. The Defendant then ordered an appraisal from CBRE, a nationally recognized and generally well-respected real estate services firm to conduct the appraisal.

43. **The appraisal yielded an (AS-COMPLETE) appraised value of at least ~$16m.**
   **EXHIBIT E *(to be supplemented through discovery)***

44. It was during this time that the Defendant even made plans to visit the Property.

45. Then, on or about September 12, 2023 (only three days before the scheduled closing), three individuals of the Defendant, including its principal, Mr. Seth Weissman, personally traveled from New York to Pontiac to do an in-person walk through of the Property.

46. The Developer invested both time and money to ensure a warm-welcome for the group, including orchestrating a walk-though of the Developer's other projects in the area,

HANNA & JARBO, PLLC

33717 WOODWARD AVENUE, SUITE 560, BIRMINGHAM, MICHIGAN 48009 PHONE: (248) 209-6486 FAX: (202) 478-5005 WWW.HANNAJARBO.COM

followed by lunch at a 5-star restaurant, with the afternoon concluding at a meet-and-greet with the Mayor of the City of Pontiac, members of the Sherriff's department, the Project's architect, and several of the Developer's team at the Project site. **EXHIBIT F**

47. The Developer spent weeks preparing for the site visit, including orchestrating and scheduling with all of the aforementioned stakeholders to be present at the Project site visit.

48. This Honorable Court should take notice that the Developer has developed several hundred thousand square feet and several million dollars' worth of commercial real estate. This Project is not the Developer's first or even largest development and the Developer has been through several commercial and constriction loans.

49. However, the process with this particular lender (Defendant) was **clearly designed to be intentionally and maliciously more complex than necessary** in order for the Defendant to waste the Plaintiff 's and Developer's time in order to force the latter to *walk-away*, resulting in the Defendant's true intentions; keeping the original $50,000 deposit.

50. During this entire time, and in addition to the extensive underwriting process and the in-person Property site visit, the Defendant continuously burdened the Developer's team with the most onerous documentation and pre-closing requirements imaginable; items far outside the scope of an $8m commercial loan.

51. Plaintiff intends on issuing discovery for the loan documents for similar loans, made by Defendant to illustrate the *overkill* nature of this process, likely unique to Plaintiff, and potentially to other would-be borrowers which Defendant treated in this manner.

52. For example, the Defendant retained the use of a law firm in New York to prepare more than sixteen (16) different contracts that when printed totaled several hundred pages long. **EXHIBIT G**

53. The Defendant expected the Developer to review and negotiate these contracts in a matter of less than ten (10) days.

54. The contracts were clearly *Lender-Friendly* form-bank agreements, which was to be expected and is not an issue in this action.

55. What was **not expected** from a *fancy New York law firm* were the countless issues and errors within the agreements. They were riddled with spelling errors, references were made to completely different entities, some of the contracts cited different states altogether (i.e. New Jersey in once instance), and most concerning of all, some of the most important **contracts had material terms which totally contradicted those from the Term Sheet**.

HANNA & JARBO, PLLC

33717 WOODWARD AVENUE, SUITE 560, BIRMINGHAM, MICHIGAN 48009 PHONE: (248) 209-6486 FAX: (202) 478-5005 WWW.HANNAJARBO.COM

HANNA & JARBO, PLLC

33717 WOODWARD AVENUE, SUITE 560, BIRMINGHAM, MICHIGAN 48009 PHONE: (248) 209-6486 FAX: (202) 478-5005 WWW.HANNAJARBO.COM

56.    In addition, the Defendant refused to negotiate in good faith certain terms which both the Developer AND the Defendant knew to be untrue. One such example was Defendant's refusal to remove a warranty by Plaintiff that there was no asbestos/lead anywhere on the Property – clearly an untrue statement given that the Property is nearly 100 years old. **EXHIBIT H**

57.    This was AFTER the in-person Project site visit where the Defendant's principal, Mr. Weissman, commented that older building such as the subject Property was always a challenge due to the once-prevailing practice of using as asbestos and other toxic materials.

58.    If left unchanged, these material terms would render the loan breached at conception, also known as an automatic *technical default*.

59.    For judicial notice purposes, in the commercial lending business, a *technical default* is when one of the parties, usually the borrower, is in default of some material provision of the loan documents which poses a **serious risk of loss**, better defined as follows:

> In the context of commercial real estate financing, a technical default of a commercial loan occurs when a borrower breaches non-financial covenants or technicalities specified in the loan agreement, such as reporting requirements, maintenance of certain financial ratios, **or misrepresenting material facts which the lender could claim detrimental reliance (or even fraud)**, rather than defaulting on payment obligations. The risks associated with a technical default include potential acceleration of the loan, increased interest rates, or the lender's right to take corrective actions, impacting the borrower's financial standing and potentially leading to more severe consequences such the loss of the property by foreclosure, legal actions to the guarantor(s), or other default actions.

60.    To its significant determent and at its own expense Plaintiff and its Developer had in good faith honored every request made by Defendant and its team including having prepared for unnecessarily-expensive insurance policies, contracted several third-party providers to prepare reports required by the Defendant, spent countless hours reviewing the legal documents, order title and meet and confer with the title company on several occasions, and put into motion countless other items all in reliance of a then-certain closing date.

61.    Within approximately 48 hours of closing, and having already spent tens of thousands of dollars in reliance of the September 15 closing date, Defendant advised Plaintiff and its Developer that the Plaintiff would need to come to closing with approximately $1.8m and that without this money at closing, there would be no deal.

62. Upon hearing of this eleventh hour material change in the terms (in complete conflict with both the letter and the spirit of the Term Sheet), and having only heard of such a requirement for the first time within 48 hours of closing, Plaintiff and its Developer worked tirelessly trying to negotiate with Defendant to *save the deal*, even requesting typically-permitted flexibility in items such as the interest reserve amount, all to no avail.

63. It very quickly became abundantly obvious – **Defendant never had any genuine interest whatsoever to loan any funds to Plaintiff.**

64. Defendant was simply stringing Plaintiff and its Developer along to "earn" the $50,000 which it had fraudulently obtained under false pretenses during the Term Sheet process.

65. Upon requesting the return of the $50,000 – or as much of it as reasonable so that Plaintiff and its Developer could quickly try to pivot and move forward with some of the other previous lenders – **Defendant refused to return the good faith deposit** and instead offered to return only $11,057; claiming to have *spent* the difference. **EXHIBIT I**

66. Through extensive Discovery, Plaintiff intends to show that most, if not all of its $50,000 was fraudulently converted by Defendant, and that the latter never intended on closing.

67. More to the point, it has come to Plaintiff's attention that even the appraisal fee ($8,000) has not been paid to CBRE. Plaintiff learned of this as it attempted to acquire a copy for use in other loan applications.

68. Plaintiff sought to obtain the original appraisal from the Defendant and agreed to offset the $8,000 appraisal fee from the $50,000 good faith deposit, the return of which was then still being disputed between the parties.

69. Instead of working with Plaintiff on helping to expedite its mitigation efforts, Defendant maliciously withheld the appraisal stating that it would only release it if Plaintiff signed a release on the balance of the good faith deposit, less the $11,057 it was offering to refund. **EXHIBIT H**

70. This process has caused undue burden, delay, and damage to Plaintiff and its Developer.

71. Throughout the pendency of this action, specifically, through extensive discovery of current and past borrowers and applicants, Plaintiff intends to prove that this malicious scheme to defraud eager and well-intentioned borrowers is Defendant's modus operandi, and not the first occurrence. Plaintiff seeks damages for its converted $50,000 good faith deposit and for the significant delays cause, and which continue to be caused by Defendant's bad-faith and malicious, intentional, and unlawful actions.

## COUNT I
### "BREACH OF CONTRACT & BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALINGS"

72. Plaintiff restates and incorporates the proceeding paragraphs of this complaint, by reference, as though fully stated herein.

73. The contract was an agreement by and between the parties to close on the terms and conditions reflected in the mutually executed Term Sheet.

74. Plaintiff had performed all duties as required under the express terms therein and furthermore, unlike Defendant, has acted in accord with the general sprit of the Term Sheet.

75. Defendant has, in violation of the duty to contract in good faith and fair dealings, failed to uphold the principles of honesty, reasonableness, and fairness inherent in contractual relationships, thereby breaching the fundamental obligations established by law.

76. As a direct result of the Defendant's actions, Plaintiff has been damaged and continues to be damaged.

77. As one of its many efforts to avoid the necessity of this instant complaint, Plaintiff has made numerous attempts to resolve this breach with Defendant, but Defendants seem uninterested in returning Plaintiff's money.

78. As a direct and proximate cause of the Defendant's breach of the Agreement, Plaintiff has incurred actual damages in excess of $50,000, for which Plaintiff requests this Honorable Court enter judgment, together with post-judgment contract interest thereon capped at the rate of 13.00% calculated from the date of the filing of this instant complaint pursuant to MCL 600.6013(7) and compounded annually and court costs.

## COUNT II
### "PROMISSORY ESTOPPEL"

79. Plaintiff restates and incorporates the proceeding paragraphs of this complaint, by reference, as though fully stated herein.

80. Defendant made a specific promise to proceed with closing on a date certain, subject to specific and unambiguous terms stated in the mutually executed Term Sheet (which Defendant itself authored).

81. Defendant then refused to close at the last minute in a cowardice and fraudulent act by requesting Plaintiff come to the closing table what was certainly known to be an impossible condition, that being $1.8m dollars.

HANNA & JARBO, PLLC
3717 WOODWARD AVENUE, SUITE 560, BIRMINGHAM, MICHIGAN 48009 PHONE: (248) 209-6486 FAX: (202) 478-5005 WWW.HANNAJARBO.COM

82.  Defendant had every reasonable expectation that its actions would induce Plaintiff (or any other reasonable borrower in Plaintiff's position) to effectuate its end of the bargain by preparing for and making the necessary plans and incurring expenses in direct contemplation of closing;

83.  Those actions included, without limitation, obtaining a title policy, several complex insurance policies, review of unnecessarily complex loan documents, spending countless hours communicating with legal counsel, creditors, partners, tenants, architects, vendors, city officials, etc… all in contemplation of a closing which the Defendant knew would never happen;

84.  Plaintiff *clearly* relied, to its detriment, on the representations, and actions of Defendant;

85.  Defendant's actions have caused circumstances such that Plaintiff has been damaged to the extent that seeking a new loan is now adding not less than 60 days to the project start date;

86.  With a reasonably expected net operating income of $1.4m per annum, or $3,835.62 per diem, Plaintiff's special damages are at minimum $230,136.96 for the unmitigated delay caused by Defendant's malicious actions.

## COUNT III
## "DETREMENTAL RELIANCE"

87.  Plaintiff restates and incorporates the proceeding paragraphs of this complaint, by reference, as though fully stated herein.

88.  The parties entered into an agreement to close upon the terms of the mutually executed Term Sheet, during which the Defendant made explicit promises and assurances to the Plaintiff.

89.  Relying in good faith on the Defendant's promises, the Plaintiff incurred substantial costs and expenses as it was misled about a closing which was never going to happen, and further prepared for receipt of funding of a construction project putting into action a complex series of events required by any such construction project of this scale, resulting in reputational damage, and other actual damages in excess of $250,000.

90.  Defendant was fully aware or should have been aware that the Plaintiff was relying on their promises, as evidenced by all of the actions undertaken by Plaintiff.

91.  As a direct consequence of the Defendant's actions, the Plaintiff has suffered reputational damage, and other actual damages in excess of $250,000.

HANNA & JARBO, PLLC

33717 WOODWARD AVENUE, SUITE 560, BIRMINGHAM, MICHIGAN 48009 PHONE: (248) 209-6486 FAX: (202) 478-5005 WWW.HANNAJARBO.COM

92. The damages incurred by the Plaintiff are a direct result of the Defendant's promises and representations.

93. But for Defendant's actions, Plaintiff would not have experienced such detriment.

94. This claim is grounded in the legal principle of detrimental reliance, as recognized in Michigan common law.

95. Plaintiff seeks actual damages in excess of $250,000, or as much as this Honorable Court deems appropriate in excess thereof.

### COUNT IV
### "STATUTORY CONVERSION PURSUANT TO MCL 600.2919a"

96. Plaintiff reserves its rights under the Michigan Court Rules to amend its complaint to include additional, or alternative counts, including claims of Fraud.

97. Defendant has refused to return Plaintiff's $50,000 good faith deposit.

98. Despite numerous written and verbal demands from Plaintiff, Defendant has failed to return the $50,000 to Plaintiff.

99. MCL 600.2919a states as follows:

> (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
>
> (a) Another person's stealing or embezzling property or converting property to the other person's own use.
> (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.
>
> (2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

100. Plaintiff is thereby entitled to treble damages and attorney's fees as a result of Defendant's willful conversion of its money.

101. Plaintiff seeks damages in excess of $150,000, plus Plaintiff's reasonable attorney's fees.

HANNA & JARBO, PLLC
33717 WOODWARD AVENUE, SUITE 560, BIRMINGHAM, MICHIGAN 48009 PHONE: (248) 209-6486 FAX: (202) 478-5005 WWW.HANNAJARBO.COM

HANNA & JARBO, PLLC
33717 WOODWARD AVENUE, SUITE 560, BIRMINGHAM, MICHIGAN 48009 PHONE: (248) 209-6486 FAX: (202) 478-5005 WWW.HANNAJARBO.COM

### COUNT V
### "FRAUD IN THE INDUCEMENT"

102.    Plaintiff reserves its rights under the Michigan Court Rules to amend its complaint to include additional, or alternative counts, including claims of Fraud.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enters judgment against Defendant for actual damages, plus all associated costs, and reasonable attorneys' fees in the following amounts:

1.  **Count I – Breach of Contract**: Actual damages in excess of $50,000, for which Plaintiff requests this Honorable Court enter judgment, together with post-judgment contract interest thereon capped at the rate of 13.00% calculated from the date of the filing of this instant complaint pursuant to MCL 600.6013(7) and compounded annually and court costs;

2.  **Count II – Promissory Estoppel**: Plaintiff's special damages of $230,136.96;

3.  **Count III – Detrimental Reliance**: Reputational damage, and other actual damages in excess of $250,000; plus

4.  **Count IV – Statutory Conversion**: Treble damages per MCL 600.2919a of $150,000, plus Plaintiff's reasonable attorney's fees;

5.   **Count V – Fraud**: Plaintiff reserves its rights under the Michigan Court Rules to amend its complaint to include claims for damages stemming from Fraud; plus

6.  **Costs and Attorney's Fees**: Plaintiff's actual costs and its reasonable attorney's fees.

Respectfully submitted,

*/s/ Dalen P. Hanna*
Hanna & Jarbo, PLLC
Dalen P. Hanna (P81533)
33717 Woodward Avenue, Suite 560
Birmingham, Michigan 48009
dh@hannallp.com
(248) 209-6486 Office
(202) 478-5005 Fax

**Dated: October 16, 2023**

**STATE OF MICHIGAN
IN THE 6TH CIRCUIT COURT FOR THE COUNTY OF OAKLAND**

LOFT HOLDINGS, LLC

      Plaintiff,

-vs-

USC 28 N SAGINAW, LLC,
URBAN STANDARD MANAGER, LP,
URBAN STANDARD, LLC, and
URBAN STANDARD CAPITAL, LLC
d/b/a URBAN STANDARD CAPITAL
d/b/a USC

      Collectively, Defendants.

---

# Plaintiff's Exhibit:

# "A"

HANNA & JARBO, PLLC

33717 WOODWARD AVENUE, SUITE 560, BIRMINGHAM, MICHIGAN 48009 PHONE: (248) 209-6486 FAX: (202) 478-5005 WWW.HANNAJARBO.COM

# STATE OF NEW YORK
# DEPARTMENT OF STATE

I hereby certify that the annexed copy for USC 28 N SAGINAW LLC, File Number 230912001848 has been compared with the original document in the custody of the Secretary of State and that the same is true copy of said original.



WITNESS my hand and official seal of the Department of State, at the City of Albany, on September 12, 2023.

Brendan C. Hughes
Executive Deputy Secretary of State

Authentication Number: 100004292883 To Verify the authenticity of this document you may access the Division of Corporation's Document Authentication Website at http://ecorp.dos.ny.gov



**NEW YORK** STATE OF OPPORTUNITY. | **Division of Corporations, State Records and Uniform Commercial Code**

New York State
**Department of State**
**DIVISION OF CORPORATIONS,**
**STATE RECORDS AND**
**UNIFORM COMMERCIAL CODE**
One Commerce Plaza
99 Washington Ave.
Albany, NY 12231-0001
www.dos.ny.gov

# CERTIFICATE OF AMENDMENT
## OF
## ARTICLES OF ORGANIZATION
## OF

### 28 N SAGINAW LLC

*(Insert Name of Domestic Limited Liability Company)*
*(Name change only)*

Under Section 211 of the Limited Liability Company Law

**FIRST:** The name of the limited liability company is:

28 N SAGINAW LLC

If the name of the limited liability company has been changed, the name under which it was organized is:

**SECOND:** The date of filing of the articles or organization is:  09/11/2023 .

.

**THIRD:** The amendment affected by this certificate of amendment is as follows:

Paragraph FIRST of the Articles of Organization relating to the name of the limited liability company is hereby amended to read as follows:

**FIRST:** The name of the limited liability company is:

USC 28 N SAGINAW LLC

**X** /s/ Christopher D. Aloisi

*(Signature)*

Christopher D. Aloisi

*(Type or print name)*

Capacity of Signer (*Check appropriate box*):

Member

Manager

X    Authorized Person

DOS-2120-f (Rev. 09/18)

Page 1 of 2

Filed with the NYS Department of State on 09/12/2023
Filing Number: 230912001848 DOS ID: 7076338

# CERTIFICATE OF AMENDMENT
## OF
# ARTICLES OF ORGANIZATION
## OF

### 28 N SAGINAW LLC

*(Insert Name of Domestic Limited Liability Company)*

Under Section 211 of the Limited Liability Company Law

Filer's Name and Mailing Address:

*Name:*

Windsor Corporate Services

*Company, if Applicable:*

P.O. Box 128

*Mailing Address:*

Glenmont, NY 12077

*City, State and Zip Code:*

**NOTES:**

1. This form was prepared by the New York State Department of State to amend paragraph FIRST of the articles of organization to change the name of a domestic limited liability company. You are not required to use this form. You may draft your own form or use forms available at legal supply stores.
2. The name of the limited liability company and the date of filing of the articles of organization must exactly match the records of the Department of State. This information should be verified on the Department of State's website at www.dos.ny.gov.
3. The Department of State recommends that legal documents be prepared under the guidance of an attorney.
4. This certificate must be submitted with a $60 filing fee made payable to the Department of State.

*(For office use only)*

Filed with the NYS Department of State on 09/12/2023
Filing Number: 230912001848 DOS ID: 7076338

**STATE OF MICHIGAN**
**IN THE 6TH CIRCUIT COURT FOR THE COUNTY OF OAKLAND**

LOFT HOLDINGS, LLC

      Plaintiff,

-vs-

USC 28 N SAGINAW, LLC,
URBAN STANDARD MANAGER, LP,
URBAN STANDARD, LLC, and
URBAN STANDARD CAPITAL, LLC
d/b/a URBAN STANDARD CAPITAL
d/b/a USC

      Collectively, Defendants.

---

# Plaintiff's Exhibit:

# "B"

HANNA & JARBO, PLLC

33717 WOODWARD AVENUE, SUITE 560, BIRMINGHAM, MICHIGAN 48009 PHONE: (248) 209-6486 FAX: (202) 478-5005 WWW.HANNAJARBO.COM



233 Broadway, Suite 1470
New York, New York 10279
(917) 388-2300

August 21st, 2023

**TERM SHEET**
**For Discussion Purposes Only**

This Term Sheet is for discussion purposes only and does not constitute a commitment by the Lender. The Lender would only issue a commitment after having been granted approval by the Lender's Credit Committee and such a commitment would only become effective after being accepted by the Borrower, in writing. The Lender reserves the right to withdraw this term sheet from Consideration, or to change the proposed terms hereof, at any time.

| | |
|---|---|
| **BORROWER:** | A Special Purpose Entity (SPE) to be created that wholly owns the Premises |
| **GUARANTORS:** | Managing Member of the Borrowing Entity |
| **COLLATERAL/PREMISES:** | |

1) First Mortgage on 28 N Saginaw St, Pontiac, MI
2) First priority pledge of all equity interests in the Borrower secured by delivery of certificated membership interests
3) Collateral Pledge of all contracts, bank accounts, and agreements relating to the property
4) Assignment and security interest in future leases
5) Assignment of all plans, contracts, approvals, licenses and permits
6) UCC liens on all property, equipment and fixtures

**SENIOR LOAN AMOUNT:**     Lessor of $8,000,000 or 60% of appraised value with cost to complete held back and funded through requisitions

**S&U At Closing**

| Sources | |
|---|---|
| Equity | $2,436,592.00 |
| Debt | $8,000,000.00 |
| **Total** | **$10,436,592.00** |
| Uses | |
| Hard Costs* | $7,916,592.00 |
| Soft Costs | $1,000,000.00 |
| Origination Fee | $120,000.00 |
| Interest Reserve | $1,400,000.00 |
| Broker Fee | TBD |
| Title/MRT | TBD |
| Borrower legal | TBD |
| **Total** | **$10,436,592.00** |

*To include a 12.5% contingency between owner / GC

10 % 

Urban
Standard
Capital

233 Broadway, Suite 1470
New York, New York 10279
917-388-2300



**GRANT:**

Borrower is pursuing a grant with the Michigan State Housing Development Authority and agrees i) not to disburse any funds from the Grant ii) to utilize $2MM of the grant to make a principal paydown to Lender iii) to make a principal paydown to Lender of at least $2MM from 30 days from receipt of TCO

*GRANT P/ PAYMENT*

**TERM:**

24 Months

**MINIMUM INTEREST:**

12 Months

**INTEREST RESERVE:**

24 Months

**ORIGINATION FEE:**

1.50%

**INTEREST RATE:**

Rate will be equal to WSJ Prime Rate (currently 8.50%) + 4.00% on the outstanding principal balance, with a floor rate equal to the prevailing rate of interest at closing but in no event less than 12.50%. The interest rate is adjusted to reset daily

Please note that interest (based on the above rates) shall accrue from the date on which a closing is scheduled as between borrower and lender (either directly or through respective legal counsel)(the "Scheduled Closing Date"), irrespective of whether borrower closes the transaction on such Scheduled Closing Date.

**EXTENSION FEE:**

So long as Borrower is not in default of its obligations under the loan, Borrower will have two options to extend the term of the Loan by six months under the following terms:
- Payment of 1.00% extension fee on the Senior Loan Amount
- At lender's discretion, reimbursement of the cost to order an updated appraisal on the collateral

**EXIT FEE:**

.25%

**LOAN SERVICING FEE:**

$200 per month

**TITLE:**

First American of Bloomfield will act as agent and issue loan title policy through First American as the underwriter

**GOOD FAITH DEPOSIT:**

Upon acceptance of this term sheet, Borrower shall deposit $50,000 in the form of a wire transfer.

The Good Faith Deposit is inclusive of a $10,000 non-refundable Underwriting Fee (the "Underwriting Fee). Any amounts above Lender's out-of-pocket expenses, including Underwriting Fee, shall be applied toward closing costs, or, in the event the Loan does not close, returned to Borrower less the Underwriting Fee and Break Up fee, if applicable.

**Urban Standard Capital**

233 Broadway, Suite 1470
New York, New York 10279
917-388-2300



Upon request, Borrower will immediately reimburse Lender for all such costs, including internal originating and underwriting, and third-party reports which may exceed the deposit.

Wire instructions for the Deposit are as follows:

Urban Standard Manager LP
233 Broadway, Suite 1470
New York, NY 10279

Account #: 922321622
Routing #: 021000021

Bank:
JPMorgan Chase
611 Sixth Avenue
New York, NY 10011

**DEFAULT INTEREST RATE:** 24.0% per annum

**GUARANTEE:** Interest, completion, and carry guarantee and a standard bad boy guarantee with carveouts that if triggered would result in full recourse

**LENDER ATTORNEY:** TBD

**COVENANTS:**

- Lender will make best efforts to keep legal under $35,000 $25,000 ~~pl~~
- Loan is subject to a review of applicable third party reports which will be certified to lender at or prior to closing
- No additional debt, secured or unsecured, is permitted on the Premises or the Borrower unless approved in writing by the Lender.
- No commercial leases may be executed on the Premises without written approval by the lender.
- Loan is subject to a clean environmental report verified by lender.
- Lender will be provided access for inspections as reasonably requested. 10 %
- ~~12.5%~~ contingency on construction budget
- Minimum requisition of $100,000
- Reqs are contingent on approved drawings and an executed construction contract
- Construction draws to be contingent upon:
  - all advances shall be on a cost to complete basis as determined by the Construction Consultant (to be retained by Lender)



Urban
Standard
Capital

233 Broadway, Suite 1470
New York, New York 10279
917-388-2300



- Subject to Sponsor providing a personal financial statement with a net worth in excess of $5MM with a minimum of $500,000 in liquidity

**MISCELLANEOUS:**

- All out of pocket expenses including, but not limited to, title, legal, tax monitoring, construction monitoring, appraisal or brokers opinion of value, inspection and environmental fees are to be paid by the borrower.
- Credit reports on Borrower satisfactory to the Lender.
- Lender shall have the ability to advertise its role as lender on this project including digital and advertising and on site signage
- Flood search on property satisfactory to the Lender.
- 12 months of real estate taxes to be escrowed at closing (if not prepaid).
- 12 months of insurance coverage to be escrowed at closing (if not prepaid).
- Interest for the extension term is required to be posted upon exercising the extensions.
- Lender shall have the right to order an appraisal at Borrower's sole cost and expense upon a default, or where loan term exceeds twelve (12) months
- Other due diligence as the Lender may require.

**EXCLUSIVITY:**

Borrower and Guarantor hereby expressly agree and acknowledge that (a) Lender is devoting its personnel and financial resources to the consideration of the Loan; (B) in Lender's industry, business opportunities are limited and extremely competitive; (c) compensation to the lender, in the event Borrower obtains financing from a source other than Lender, would be extremely difficult to calculate; (d) Lender cannot, as a result of this underwriting and analysis, commit its resources to other potential transactions and may be deprived of business opportunities thereby; and € Lender may suffer negative impact in the industry in the event the Borrower does not complete this proposed transaction or obtains financing from a competitor of the Lender. Accordingly, Borrower and Guarantor hereby expressly agree to work solely with Lender to procure the Loan and agree not to, and will cause their principal and affiliates not to, obtain or attempt to arrange financing in connection with the Property with any party other than Lender. In the event the Borrower, Guarantor or an affiliate or controlled entity of either (a) obtains financing for the Property from a source other than Lender (including joint venture equity), or (b) sells, assigns or otherwise conveys the Property or its contract to acquire the Property, Borrower and Guarantor shall be obligated to pay and Lender shall be deemed to have earned a break-up fee in the amount of $100,000, which break-up fee constitutes a reasonable estimate of Lender's damages and which break-up fee shall constitute liquidated damages. The Break Up fee is *in addition* to reimbursement for any deal expense costs (3rd party reports, legal, etc). Borrower and Guarantor shall be jointly and severally responsible for Lender's reasonable legal fees and costs in connection with the recovery of the break-up fee. This foregoing exclusivity provision is in consideration for Lender issuing this Term Sheet and shall be binding upon Borrower and Guarantor regardless of Lender making a loan offer.



Urban
Standard
Capital

233 Broadway, Suite 1470
New York, New York 10279
917-388-2300



If you agree with the above terms and would like to proceed with the loan request please sign the term sheet in the space provided below and return the term sheet to my attention along with a check (or wire) in the amount of $50,000

This term sheet is for discussion purposes only and should not be construed as a commitment to lend.

**This term sheet will expire August 21st, 2023**

Agreed to By:

_____        8/25/2023
Seth Weissman                                              Date
Urban Standard Development LLC

_____        8/21/2023
Loft Holdings LLC                                          Date
Dalen P. Hanna
Managing Member and General Partner

Urban
Standard
Capital

233 Broadway, Suite 1470
New York, New York 10279
917-388-2300

**STATE OF MICHIGAN
IN THE 6TH CIRCUIT COURT FOR THE COUNTY OF OAKLAND**

LOFT HOLDINGS, LLC

      Plaintiff,

-vs-

USC 28 N SAGINAW, LLC,
URBAN STANDARD MANAGER, LP,
URBAN STANDARD, LLC, and
URBAN STANDARD CAPITAL, LLC
d/b/a URBAN STANDARD CAPITAL
d/b/a USC

      Collectively, Defendants.

---

# Plaintiff's Exhibit:

# 

HANNA & JARBO, PLLC

33717 WOODWARD AVENUE, SUITE 560, BIRMINGHAM, MICHIGAN 48009 PHONE: (248) 209-6486 FAX: (202) 478-5005 WWW.HANNAJARBO.COM

**CHASE ○** *for* BUSINESS®

Printed from Chase for Business

| Wire date | Status | Wire to | Transaction number | Transfer amount | Amount |
|---|---|---|---|---|---|
| Aug 23, 2023 | In transit | URBAN STANDARD CAPITAL | 8013437786 | $50,000.00 | $50,000.00 USD |

| | |
|---|---|
| Wire to | URBAN STANDARD CAPITAL (...1622) |
| Wire from | XXXXXXXXXXXXXXXXXXXXXXX |
| Amount | $50,000.00 USD (U.S. Dollar) |
| Wire fee | Fee waived |
| Total | $50,000.00 USD (U.S. Dollar) |
| Wire date | Aug 23, 2023 |
| Status | In transit |
| Status date | Aug 23, 2023 |
| Reference number | Not applicable |
| Transaction number | 8013437786 |
| Message to recipient | 28N LOFT HOLDINGS LLC |
| Message to recipient bank | URBAN STANDARD MANAGER |
| Memo | DEPOSIT FOR 28N LOFT HOLDINGS LLC |
| Submitted by | Administrator |
| Submitted by date and timestamp | 08/23/2023 11:18:18 AM ET |
| Last modified by | Not Available |
| Modified by date and timestamp | 08/23/2023 11:18:44 AM ET |

**STATE OF MICHIGAN**
**IN THE 6TH CIRCUIT COURT FOR THE COUNTY OF OAKLAND**

LOFT HOLDINGS, LLC

      Plaintiff,

-vs-

USC 28 N SAGINAW, LLC,
URBAN STANDARD MANAGER, LP,
URBAN STANDARD, LLC, and
URBAN STANDARD CAPITAL, LLC
d/b/a URBAN STANDARD CAPITAL
d/b/a USC

      Collectively, Defendants.

---

# Plaintiff's Exhibit:

# "D"

HANNA & JARBO, PLLC

33717 WOODWARD AVENUE, SUITE 560, BIRMINGHAM, MICHIGAN 48009 PHONE: (248) 209-6486 FAX: (202) 478-5005 WWW.HANNAJARBO.COM



**STATE OF MICHIGAN**
**IN THE 6TH CIRCUIT COURT FOR THE COUNTY OF OAKLAND**

LOFT HOLDINGS, LLC

      Plaintiff,

-vs-

USC 28 N SAGINAW, LLC,
URBAN STANDARD MANAGER, LP,
URBAN STANDARD, LLC, and
URBAN STANDARD CAPITAL, LLC
d/b/a URBAN STANDARD CAPITAL
d/b/a USC

      Collectively, Defendants.

---

# Plaintiff's Exhibit:

# "E"

HANNA & JARBO, PLLC

33717 WOODWARD AVENUE, SUITE 560, BIRMINGHAM, MICHIGAN 48009 PHONE: (248) 209-6486 FAX: (202) 478-5005 WWW.HANNAJARBO.COM

**STATE OF MICHIGAN**
**IN THE 6TH CIRCUIT COURT FOR THE COUNTY OF OAKLAND**

LOFT HOLDINGS, LLC

      Plaintiff,

-vs-

USC 28 N SAGINAW, LLC,
URBAN STANDARD MANAGER, LP,
URBAN STANDARD, LLC, and
URBAN STANDARD CAPITAL, LLC
d/b/a URBAN STANDARD CAPITAL
d/b/a USC

      Collectively, Defendants.

---

# Plaintiff's Exhibit:

# "F"

HANNA & JARBO, PLLC

33717 WOODWARD AVENUE, SUITE 560, BIRMINGHAM, MICHIGAN 48009 PHONE: (248) 209-6486 FAX: (202) 478-5005 WWW.HANNAJARBO.COM

**BLACKACRE**

<u>**LOFT HOLDINGS, LLC - SITE WALK & MEETING AGENDA**</u>

**INITIAL ATTENDEES:**

- **BLACKACRE TEAM**
    - **Dalen Hanna**
    - **Maha Banno**

- **URBAN STANDARD CAPITAL TEAM**
    - **Seth Weissman**
    - **Charlie Brosen**
    - **Harris Pergament**
    - **Sam Hollander**

<u>**TUESDAY, SEPTEMBER 12, 2023**</u>
<u>**DETROIT, MICHIGAN**</u>

| TIME | LOCATION | ADDRESS | DESCRIPTION |
|------|----------|---------|-------------|
| 1:00 PM | Blackacre Office | 24681 Northwestern Hwy<br>Southfield, Michigan 48075 | Initial meet & greet<br>and Office\|Co. tour |
| 1:30 PM | Vanity - Northland | 24209 Northwestern Hwy<br>Southfield, Michigan 48075 | Vanity Salon Suites<br>concept tour |
| 2:15 PM | The Capital Grille | 2800 West Big Beaver Road<br>Troy, Michigan 48084 | Lunch |
| 3:00 PM | Loft Holdings | 28 North Saginaw Street<br>Pontiac, Michigan 48342 | Site walk of subject<br>property |

**ADDITIONAL ONSITE GUESTS:**

- **CITY OF PONTIAC**
    - **Mayor Tim Greimel**

- **OAKLAND COUNTY SHERIFFS' OFFICE**
    - **Delegate TBD**

- **ARCHITECT**
    - **John Gumma**

**STATE OF MICHIGAN**
**IN THE 6TH CIRCUIT COURT FOR THE COUNTY OF OAKLAND**

LOFT HOLDINGS, LLC

      Plaintiff,

-vs-

USC 28 N SAGINAW, LLC,
URBAN STANDARD MANAGER, LP,
URBAN STANDARD, LLC, and
URBAN STANDARD CAPITAL, LLC
d/b/a URBAN STANDARD CAPITAL
d/b/a USC

      Collectively, Defendants.

---

# Plaintiff's Exhibit:

# "G"

HANNA & JARBO, PLLC

33717 WOODWARD AVENUE, SUITE 560, BIRMINGHAM, MICHIGAN 48009 PHONE: (248) 209-6486 FAX: (202) 478-5005 WWW.HANNAJARBO.COM

## ORIGINAL LOAN DOCS FROM LENDER

Back/Forward | View | Group | Share | Edit Tags | Action

| Name ^ | Date Modified | Size | Kind |
|---|---|---|---|
| Assignment of Leases and Rents - Saginaw, MI.docx | Sep 9, 2023 at 3:25 PM | 42 KB | Microso...(.docx) |
| Borrower Contact Information Form - Pontiac, MI.docx | Sep 9, 2023 at 3:25 PM | 22 KB | Microso...(.docx) |
| Collateral Assignment of Architectural Drawings - Pontiac, MI.docx | Sep 9, 2023 at 3:25 PM | 34 KB | Microso...(.docx) |
| Collateral Assignment of Construction Contract - Pontiac, MI.docx | Sep 9, 2023 at 3:25 PM | 38 KB | Microso...(.docx) |
| Collateral Assignment of Contract, Permits - Pontiac, MI.docx | Sep 9, 2023 at 3:25 PM | 34 KB | Microso...(.docx) |
| Construction Loan Agreement - Pontiac, Michigan - v2.docx | Sep 13, 2023 at 9:15 PM | 85 KB | Microso...(.docx) |
| Construction Loan Note - Pontiac, MI - v2.docx | Sep 9, 2023 at 3:25 PM | 47 KB | Microso...(.docx) |
| Construction Mortgage and Security Agreement - Pontiac, MI.docx | Sep 9, 2023 at 3:25 PM | 102 KB | Microso...(.docx) |
| Debt Service and Carry Guaranty - Pontiac, MI.docx | Sep 9, 2023 at 3:25 PM | 57 KB | Microso...(.docx) |
| Environmental Indemnity Agreement - Saginaw, MI.docx | Sep 9, 2023 at 3:25 PM | 45 KB | Microso...(.docx) |
| Guaranty of Completion -Pontiac, MI.docx | Sep 9, 2023 at 3:25 PM | 40 KB | Microso...(.docx) |
| Instruction to Register Pledge - Pontiac, MI.docx | Sep 9, 2023 at 3:25 PM | 36 KB | Microso...(.docx) |
| IRS Form W-9.pdf | Sep 9, 2023 at 3:25 PM | 146 KB | PDF Document |
| Ownership Interests Pledge and Security Agreement - Pontiac, MI.docx | Sep 9, 2023 at 3:25 PM | 58 KB | Microso...(.docx) |
| Share Certificate No.1-6 - Pontiac, MI.docx | Sep 9, 2023 at 3:25 PM | 35 KB | Microso...(.docx) |
| Statement of Undertaking - Pontiac, MI.docx | Sep 9, 2023 at 3:25 PM | 29 KB | Microso...(.docx) |

**STATE OF MICHIGAN**
**IN THE 6TH CIRCUIT COURT FOR THE COUNTY OF OAKLAND**

LOFT HOLDINGS, LLC

      Plaintiff,

-vs-

USC 28 N SAGINAW, LLC,
URBAN STANDARD MANAGER, LP,
URBAN STANDARD, LLC, and
URBAN STANDARD CAPITAL, LLC
d/b/a URBAN STANDARD CAPITAL
d/b/a USC

      Collectively, Defendants.

---

# Plaintiff's Exhibit:

# "H"

HANNA & JARBO, PLLC

33717 WOODWARD AVENUE, SUITE 560, BIRMINGHAM, MICHIGAN 48009 PHONE: (248) 209-6486 FAX: (202) 478-5005 WWW.HANNAJARBO.COM

## HANNA & JARBO
ATTORNEYS AT LAW

Dalen Hanna <dhanna@blackacremgt.com>

---

## 28N Legal

**Michael Morrow** <mMorrow@aystrauss.com>                                    Thu, Sep 14, 2023 at 2:47 PM
To: Dalen Hanna <dhanna@blackacremgt.com>
Cc: Aaron Strauss <ays@aystrauss.com>, Charlie Brosens <charlie@uscnyc.com>, Harris Pergament
<pergament@urbanstandarddevelopment.com>, Jake Sachse <jsachse@gspartners.com>, Justin Piasecki <jpiasecki@gspartners.com>,
"Robert L. Baker, Jr." <rbaker@aystrauss.com>, Sam Hollander <sam@uscnyc.com>, Thomas Butler <tbutler@gspartners.com>,
"mbanno@blackacremgt.com" <mbanno@blackacremgt.com>

Dalen,


In follow up to our phone call last night.  I corresponded with the lender and I can add the following to the discussion on the Hazardous
Substance paragraph.

The Seller is good with your changes at (a) and will agree to amend the definition on Hazardous substances as previously stated.  At
this point they will not otherwise agreed to the changes requested in the paragraph.

The lenders language allows you to make the representation to the best of your knowledge and any inference that because its old and
might have problems is just that, a guess.  There is no actual knowledge. (Many lenders will not allow the "to the best of your
knowledge."  That is significant.)  The first sentence that you added to the paragraph doesn't work because you can do an asbestos
test and or phase II testing to find out if there is an environmental problem.

(b) needs to remain and all the Borrower is doing is representing to the best of your knowledge that notice or advice from any agency
was previously received.


Regards,

Michael


**Michael P. Morrow** *Partner*



101 Eisenhower Parkway, Suite 412, Roseland, NJ 07068


535 Fifth Avenue, 4th Floor, New York, NY 10017


NJ 973-287-3564 | FAX 973-226-4104


www.aystrauss.com


[Quoted text hidden]

**BLACKACRE**

LOFT HOLDINGS, LLC
28 NORTH SAGINAW STREET
PONTIAC, MICHIGAN

I.  **ASSIGNMENT OF LEASES AND RENTS**

    a.  Added a springing provision with a condition precedent that the validity/enforceability of the Assignment of Rents is subject to Borrower defaulting on the underlying loan. This is duplicative. As the Agreement itself requires that an Event of Default take place before the Lender can take action. So this is not necessary.

    b.  ASSIGNOR WARRANTS: Removed language which does not apply since the premise(s) described are clearly not yet completed and no tenants have yet taken occupancy.

    c.  ASSIGNOR FURTHER COVENANTS: removed language which does not apply to Michigan residential leases, but added a more general statement of compliance.

    d.  P-2: REMEDIES: Added "reasonable" before attorney fees.

    e.  Added Exhibit A (Legal Description), as provided by First American Title

II.  **BORROWER CONTACT INFO**

    a.  Added the correct contact information, email for Borrower counsel, and the FEIN.

III.  **COLLATERAL ASSIGNMENT OF ARCH. DRAWINGS**

    a.  No changes.

    b.  Added Exhibit A (Legal Description), as provided by First American Title

IV.  **COLLATERAL CONSTRUCTION CONTRACT**

    a.  No changes.

    b.  Added Exhibit A (Legal Description), as provided by First American Title

V.  **COLLATERAL CONTRACTS, PERMITS, ETC.**

    a.  No changes.

    b.  Added Exhibit A (Legal Description), as provided by First American Title

VI.  **CONSTRUCTION LOAN AGREEMENT**

    a.  Definition 1.2: Added clarifying language on architect term.

    b.  Definition 1.24: Clarified number of floors.

        i.  While the building has 14 above-ground floors, we are omitting the 13th floor for cultural reasons. Hence while floors 5-15 will all be residential apartments, the sequence of those floors will be 5, 6 , 7 , 8 , 9 , 10, 11, 12, 14, and 15

    c.  Definition 1.28: The 10% retainage amount was negotiated as part of the Term Sheet.

    d.  P-2.2(b): the wrong definition was referenced.

    e.  P-2.2(e): if a capital contribution is needed, at least 30 days will be more reasonable to notify the partners pursuant to the terms and general spirit of the LLC operating agreement for Loft Holdings, LLC. Will accept 20 days.

    f.  P-2.2(m): if a capital contribution is needed, at least 30 days will be more reasonable to notify the partners pursuant to the terms and general spirit of the LLC operating agreement for Loft Holdings, LLC. Will accept 20 days.

    g.  P-2.2(n): referencing possible loan extensions.

    h.  P-2.2(p): change in verbiage

    i.  P-2.2(q): change in verbiage

    j.  P-2.4(d): No project can reasonably be certified as "100%" complete - trust me!

**BLACKACRE**

k. P-5.1(k): Omitted - the Lender is well aware that 95%+ of the interior demolition has been completed as of the loan application.

l. P-5.1(l): Change in language with the intent of avoiding a technical default situation for matters outside of Borrower's control.  Whether or not the Grant is issued the Lender informed me that there is to be a 2 million dollar principal paydown.

m. Art. VI: Added Borrower right to cure language  Lender is not accepting of this change. If you review paragraph 5 and specifically 5.1(f) there are numerous defaults which require notice before remedy can be taken already and in many cases 30 days (more than the 21 requested).

n. P-7.1(b): if a capital contribution is needed, at least 30 days will be more reasonable to notify the partners pursuant to the terms and general spirit of the LLC operating agreement for Loft Holdings, LLC.  Lender will accept 20 days.

o. P-7.2(d): Omitted as First American will be certifying tax status upon each draw, plus Lender will have a property tax escrow.

p. P-8.15: formatting

q. Added Exhibit A (Legal Description), as provided by First American Title

## VII.  CONSTRUCTION LOAN NOTE

a. No changes.

b. Added Exhibit A (Legal Description), as provided by First American Title

## VIII.  CONSTRUCTION MORTGAGE AND SECURITY AGREEMENT

a. Sect. 8(a): Changed language to match intent of parties per term sheet.

b. Sect. 11(b): More time may be needed to comply with the notice provisions of the underlying tenant leases.  Lender will accept 15 days here.

c. Sect. 13: Omitted to avoid technical default as the Borrower is already in discussions with the City of Pontiac to lower the taxable value of the Property. Not sure why this would violate the terms or spirit of the loan.  I believe you are misinterpreting this provision which is really about protecting lender's ability to set off against balance the borrower owes to the lender on the loan in the case of bankruptcy being filed or some other creditor trying to get to the Escrow.

d. Sect. 19: We would much rather have a **Memorandum of ____** filed in the public register of deeds office which will suffice to place a legal cloud on title, and a first lien position for the benefit of Lender, without disclosing the specific terms to the public.  Lender wants the mortgage to be filed.  The majority of the financial provisions are in the Note and not the mortgage.

e. Sect. 21(n): We will all die - hopefully no time soon, but we do not want to trigger a technical default on the basis of a death of one of the partners.

f. Sect. 21(s): added materiality.  This is duplicative and not necessarily as the word material is already in the sentence later.

g. Sect. 35: This property is 100 years old. This section has been modified to reasonably account for its age, and for the substances likely used over the years, including during its construction.  Seller does not agree to the addition of this provision.  Moreover, Mortgagee cannot reasonably expect that Mortgagor could possibly represent or warrant the non-receipt of notices by past owners.  The rep as listed in the Agreement is to the best of the Borrowers knowledge.  As such the language shall remain. Lastly, the definition of Hazardous Material is far too broad. For example, **Petroleum Products** could include not only the toothbrushes we use today, but also the toothpaste!  Here is a revised definition if they have a problem with the one in the original clause.  "**Hazardous Material**" shall mean any substance, chemical, compound, product, solid, gas, liquid, waste, by-product, pollutant, contaminant, or

**BLACKACRE**

material which is regulated under any Environmental Law, and includes, without limitation: (i) asbestos, polychlorinated biphenyls, mold, and petroleum (*including crude oil or any fraction thereof*); and (ii) any material classified or regulated as "hazardous" or "toxic" pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §§ 9601 *et seq.*, Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976 and Hazardous and Solid Waste Amendments of 1984, 42 U.S.C. §§ 6901 *et seq.*, Federal Water Pollution Control Act, as amended by the Clean Water Act of 1977, 33 U.S.C. §§ 1251 *et seq.*, Clean Air Act of 1966, as amended, 42 U.S.C. §§ 7401 *et seq.*, Toxic Substances Control Act of 1976, 15 U.S.C. §§ 2601 *et seq.*, or Hazardous Materials Transportation Act, 49 U.S.C. App. §§ 5101 *et seq.*  Without intending to limit the scope or breadth of the foregoing definition, the term Hazardous Materials shall include asbestos, urea formaldehyde, polychlorinated biphenyls, crude, oil, radioactive materials, and underground storage tanks.  Hazardous Materials shall not include those materials that are used or stored at the Property in the ordinary course of business operations in compliance with Environmental Laws.
Also, please note the Lender does not agree to the removal of the last sentence stating it survives.

    h.  Notice provision updated.
    i.  **Sect. 68(z): we do have a long-term lease on the rooftop for antenna use, and a restrictive easement on changes to the exterior façade**.  We do not have a copy of the antenna lease.  Please provide.
    j.  **References to New Jersey changed to either Michigan, or New York.**
    k.  **Added Exhibit A (Legal Description), as provided by First American Title**

## IX.  DEBT SERVICE AND CARRY GUARANTY

    a.  **Changed some spelling errors.**
    b.  **P8(c): Removed this provision as it appears to establish post-loan-payoff legal obligations.**  Not willing to remove but will revise to the following:  It is the intent of Guarantor and Lender that the obligations and liabilities of Guarantor hereunder are absolute and unconditional under any and all circumstances and that until the Guaranteed Recourse Obligations of Borrower are fully and finally paid and performed, and not subject to refund or disgorgement, the obligations and liabilities of Guarantor hereunder shall not be discharged or released, in whole or in part, by any act or occurrence that might, but for the provisions of this Guaranty, be deemed a legal or equitable discharge or release of a Guarantor. This Guaranty shall be deemed to be continuing in nature and shall remain in full force and effect and shall survive the exercise of any remedy by Lender under the Security Instrument or any of the other Loan Documents, including, without limitation, any foreclosure or deed in lieu of foreclosure.
    c.  Notice provision updated.
    d.  **P8(n): Added "reasonable" before attorney fees**.

Mortgaged Property, Mortgagor shall immediately notify Mortgagee. Mortgagor shall conduct and complete all investigations, studies, sampling, and testing, and all remedial actions necessary to clean up and remove all Hazardous Materials from the Mortgaged Property in accordance with all applicable federal, state and local laws, ordinances, rules and regulations.  The term "**Hazardous Materials**" as used in this Mortgage shall include, without limitation, gasoline, explosives, radioactive materials, or related or similar materials, or any other substance or material defined as a hazardous or toxic substance or material by any federal, state or local law, ordinance, rule or regulation.

Deleted:

Deleted: asbestos,

Deleted: petroleum products,

Deleted: polychlorinated biphenyls

Deleted: The obligations and liabilities of Mortgagor under this Section 35 shall survive any entry of a judgment of foreclosure or the delivery of a deed in lieu of foreclosure of this Mortgage.

SECTION 36. **Indemnification.**

Mortgagor shall protect, defend, indemnify and save harmless Mortgagee from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including without limitation reasonable attorneys' fees and expenses), imposed upon or incurred by or asserted against Mortgagee by reason of (a) ownership of this Mortgage, the Mortgaged Property or any interest therein or receipt of any Rents; (b) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) any use, nonuse or condition in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (d) any failure on the part of Mortgagor to perform or comply with any of the terms of this Mortgage; (e) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any part thereof; (f) the failure of any person to file timely with the Internal Revenue Service an accurate Form 1099-B, Statement for Recipients of Proceeds from Real Estate, Broker and Barter Exchange Transactions, which may be required in connection with this Mortgage, or to supply a copy thereof in a timely fashion to the recipient of the proceeds of the transaction in connection with which this Mortgage is made; (g) any claim for brokerage fees or other consideration from any broker in connection with the loan secured by this Mortgage, except to the extent, if any, Mortgagee may have agreed pursuant to a separate agreement to compensate the broker engaged by Mortgagor; (h) the presence, disposal, escape, seepage, leakage, spillage, discharge, emission, release, or threatened release of any Hazardous Materials, from, or affecting the Mortgaged Property or any other property; (i) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to such Hazardous Materials; (j) any lawsuit brought or threatened, settlement reached, or government order relating to such Hazardous Materials; or (k) any violation of laws, orders, regulations, requirements, or demands of government authorities, which are based upon or in any way related to such Hazardous Materials including, without limitation, the costs and expenses of any remedial action, attorney and consultant fees, investigation and laboratory fees, court costs, and litigation expenses.  Any amounts payable to Mortgagee by reason of the application of this Section 36 shall become immediately due and shall bear interest at the Default Rate from the date loss or damage is sustained by Mortgagee until paid.   The obligations of Mortgagor under this Section 36 shall survive any termination, satisfaction, assignment, entry of judgment of foreclosure or delivery of a deed in lieu of foreclosure of this Mortgage.

SECTION 37. **Notices.**

Except for any notice required under applicable law to be given in another manner,

- 26 -

**STATE OF MICHIGAN**
**IN THE 6TH CIRCUIT COURT FOR THE COUNTY OF OAKLAND**

LOFT HOLDINGS, LLC

     Plaintiff,

-vs-

USC 28 N SAGINAW, LLC,
URBAN STANDARD MANAGER, LP,
URBAN STANDARD, LLC, and
URBAN STANDARD CAPITAL, LLC
d/b/a URBAN STANDARD CAPITAL
d/b/a USC

     Collectively, Defendants.

---

# Plaintiff's Exhibit:

# "I"

HANNA & JARBO, PLLC

33717 WOODWARD AVENUE, SUITE 560, BIRMINGHAM, MICHIGAN 48009 PHONE: (248) 209-6486 FAX: (202) 478-5005 WWW.HANNAJARBO.COM

**HANNA & JARBO**
ATTORNEYS AT LAW

**Dalen Hanna <dhanna@blackacremgt.com>**

---

## Follow up / 28 N Saginaw
10 messages

---

**Charlie Brosens** <charlie@uscnyc.com>                                      Tue, Sep 19, 2023 at 4:50 PM
To: Dalen Hanna <dhanna@blackacremgt.com>, Maha Banno <mbanno@blackacremgt.com>, Jake Sachse <jsachse@gspartners.com>, Justin Piasecki <jpiasecki@gspartners.com>, Thomas Butler <tbutler@gspartners.com>
Cc: Harris Pergament <pergament@urbanstandarddevelopment.com>

Dalen,

Please see below, working on the release for the appraisal for you right now too.

- We got Partners to waive cost in full for the plan and cost review
- 3 background reports are $650 each - they discounted from $1,950 to $1,450
- Legal - $12K, we have a fully negotiated doc set for the next deal or for this one if we can pick things back up later in the process!
- UW fee - $10K, no additional charge if we get this loan closed with you. Same goes with the cost that we incurred for entity formation and publishing
- Appraisal - $8K, was expedited and the appraiser did a good job / hopefully you find some value in this report (and this would of course work for us for a future closing too)

Please let me know if this looks OK after you have the chance to review. The net number represents what we would be sending back to you net of expenses against the deposit.

| | |
|---|---|
| Deposit | $50,000.00 |
| USC UW Fee | $10,000.00 |
| Travel | $4,000.00 |
| Insurance Review | $2,250.00 |
| Legal | $12,000.00 |
| 3 Background Reports | $1,450.00 |
| Appraisal | $8,000.00 |
| Plan and Cost Review | $0.00 |
| Entity Formation | $1,243.00 |
| Net | $11,057.00 |

Best,
Charlie

Charlie Brosens
Vice President

233 Broadway
Suite 1470
New York, NY 10279
Phone: 914-400-5515

**Summons** (3/23)

2023-203279-CB

Case No. _____

---

| PROOF OF SERVICE |

**TO PROCESS SERVER**: You must serve the summons and complaint and file proof of service with the court clerk before the expiration date on the summons. If you are unable to complete service, you must return this original and all copies to the court clerk.

| CERTIFICATE OF SERVICE / NONSERVICE |

☐ I served   ☐ personally   ☐ by registered or certified mail, return receipt requested, and delivery restricted to the the addressee (copy of return receipt attached)   a copy of the summons and the complaint, together with the attachments listed below, on:

☐ I have attempted to serve a copy of the summons and complaint, together with the attachments listed below, and have been unable to complete service on:

| Name | Date and time of service |
|---|---|
| Place or address of service | |
| Attachments (if any) | |

☐ I am a sheriff, deputy sheriff, bailiff, appointed court officer or attorney for a party.

☐ I am a legally competent adult who is not a party or an officer of a corporate party. I declare under the penalties of perjury that this certificate of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee | Miles traveled | Fee | | Signature |
|---|---|---|---|---|
| $ | | $ | | |
| Incorrect address fee | Miles traveled | Fee | TOTAL FEE | Name (type or print) |
| $ | | $ | $ | |

| ACKNOWLEDGMENT OF SERVICE |

I acknowledge that I have received service of a copy of the summons and complaint, together with

Attachments (if any)

on October 24, 2023 @ 1:30 pm
Date and time

on behalf of   Urban Standard Capital, LLC,
Urban Standard Manager, LP, and,
USC 28 N Saginaw, LLC, only

Signature

Philip Cwagenberg, Esq.
Name (type or print)

**EXHIBIT 2**

**Copies of All Process, Pleadings, and Orders Served
on the Defendants in The State Court Action**

**None**

ISHBIA & GAGLEARD, P.C.
Attorneys and Counselors
251 Merrill St., Suite 212
Birmingham, MI 48009

## CERTIFICATE OF SERVICE

On November 15, 2023, I electronically submitted these papers with the Clerk of Court for the U.S. District Court of Eastern District of Michigan, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Philip Cwagenberg*

**ISHBIA & GAGLEARD, P.C.**
Attorneys and Counselors
251 Merrill St., Suite 212
Birmingham, MI 48009