UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOFT HOLDINGS, LLC,

        Plaintiff,                           Case No. 2:23-cv-12904

v.                                            Honorable Susan K. DeClercq
                                                 United States District Judge

USC 28 SAGINAW, LLC, URBAN
STANDARD MANAGER, LP, AND
URBAN STANDARD CAPITAL, LLC,

        Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS (ECF NO. 4)**

In September 2023, Plaintiff Loft Holdings was poised to secure a loan with lenders based in Delaware and New York to redevelop a nearly 100-year-old building in Pontiac, Michigan. The deal fell apart right before closing, and Plaintiff sued the lending entities in a Michigan court. The Defendant lenders removed the case to the United States District Court for the Eastern District of Michigan, and then filed a motion to dismiss, arguing this Court may not exercise personal jurisdiction over any of the three lenders. But, as explained below, the lender Defendants' conduct is within the reach of Michigan's long-arm statute and comports with due process such that this Court may exercise personal jurisdiction over them. Accordingly, Defendants' Motion to Dismiss will be denied.

## I. BACKGROUND

Plaintiff Loft Holdings LLC is a single-purpose entity[1] which owns commercial property at 28 N. Saginaw Street in Pontiac, Michigan[2] ("the Saginaw Street Property"). ECF No. 1 at PageID.12. Blackacre Management[3]—a property development company which is *not* a party to this case—"is in the process of redeveloping" the Saginaw Street Property "into a mixed-use residential and commercial development." *Id.* As part of that process, in 2023, Blackacre "was introduced to" Defendants Urban Standard Manager, LP and Urban Standard Capital, LLC[4] (collectively "Urban Standard") as "a prospective lender." *Id.* Urban

---

[1] Single-purpose entities are corporate entities commonly formed when developing commercial real estate context for the sole purpose of "own[ing]" a specific parcel of commercial property. Steven B. Lesser & Ryan F. Carpenter, *Staying Single: Preserving the Single-Purpose Entity for Construction Projects*, CONSTR. LITIG. R., Jan. 2017, at 1. This practice allows the developer or owner "to reap the financial benefit from the [development] project, if everything goes well[.]" *Id.* But if the project is not profitable, having a single-purpose entity own the property "prevent[s] [the] negative financial ramifications from impacting other unrelated projects or affiliated companies" of the developer. *Id.*

[2] The building at 28 N. Saginaw Street is commonly known as the Oakland Towne Center and is an art-deco tower originally built in 1925 as the Pontiac State Bank headquarters. Tim Keenan, *Oakland Towne Center Project in Pontiac Secures $9.6M in Funding*, DBUSINESS (Dec. 26, 2023), https://www.dbusiness.com/daily-news/oakland-towne-center-project-in-pontiac-secures-9-6m-in-funding/ [https://perma.cc/P5GF-6BUN].

[3] Notably, according to Blackacre's website, Plaintiff's attorney, Dalen P. Hanna, is also the "Founder & CEO" of Blackacre. BLACKACRE MANAGEMENT, https://www.blackacremgt.com/team (last visited Aug. 28, 2024) [https://perma.cc/8LQ9-2QLP].

[4] Urban Standard reports that Urban Standard Capital, LLC "was dissolved [i]n October 2022, about 60 days after it was organized in error." ECF No. 4 at PageID.74.

Standard, according to Plaintiff's Complaint, "operate[s] and market[s] themselves as an alternative 'friendly' bridge-loan, flex-loan and/or debt fund lender with the capability to provide quick, flexible, and fair loan terms." *Id.*

Plaintiff alleges that Blackacre "provided [Urban Standard] with an extensive and well-prepared underwriting package which included all of the details of the Project," including all information necessary "to assess the Project's viability, its construction budget," and Blackacre's project and financial history. *Id.* at PageID.13 (noting Urban Standard "had certain knowledge of the cash-position of the borrower/guarantors.").

On August 21, 2023, Urban Standard provided a final copy of the Term Sheet to Plaintiff. *Id.*; *see also id.* at PageID.29–33. The Term Sheet provided that Urban Standard would loan Plaintiff $8,000,000.00 with no cash due at closing and listed the Saginaw Street Property as collateral. *Id.* at PageID.29. The Term Sheet also provided that Urban Standard "reserve[d] the right to . . . change the proposed terms hereof, at any time." *Id.*

After both Plaintiff and Defendants signed the Term Sheet, Plaintiff "wired $50,000 [to Defendants] as a good faith deposit," in accordance with the terms. *Id.* at PageID.13. According to the Term Sheet, Plaintiff's $50,000 deposit was to be "applied toward closing costs," *id.* at PageID.30. The Term Sheet further provided that if the loan did not close, Plaintiff's $50,000 would be "returned to Borrower less

the Underwriting Fee and Break Up fee, if applicable." *Id.* Closing was scheduled to occur on September 15, 2023. *Id.* at PageID.14.

Plaintiff alleges that at this point, the Parties began exchanging loan documents and that the documents Urban Standard provided Plaintiff included "countless issues and errors," including "references to completely different entities" and states, and material terms which contradicted the terms agreed upon in the Term Sheet. *Id.* at PageID.17.

Three days before closing, Urban Standard sent three agents, "including its principal, Mr. Seth Weissman," to "do an in-person walk through of the" Saginaw Street Property." *Id.* at PageID.16; *see also* ECF No. 1 at PageID.40. The Urban Standard agents flew from New York City to Detroit, Michigan, and spent the afternoon with several Blackacre agents, the Mayor of Pontiac, an Oakland County Sherriff's' Office representative, and the architect hired for the Saginaw Street Property project. *See* ECF No. 1 at PageID.40. The afternoon's agenda included activity in four separate locations in Southfield, Troy, and Pontiac, and culminated with a visit to the Saginaw Street Property. *Id.*

After Urban Standard's site visit, Urban Standard informed Plaintiff and Blackacre that it would require $1,800,000.00 in cash at closing, otherwise "there would be no deal." *Id.* at PageID.18.

Plaintiff claims it attempted to "*save the deal*," but was unable to raise the

cash Urban Standard requested within two days, so the deal never closed. *Id.* at PageID.19. Plaintiff requested the return of the $50,000 good-faith deposit, but Urban Standard responded that Plaintiff was only entitled to receive $11,057 because Urban Standard had spent the rest. *Id.* But Plaintiff alleges that "most, if not all, of its $50,000 was fraudulently converted by [Urban Standard]." *Id.* Further, Plaintiff alleges that Urban Standard never intended to loan the funds to Plaintiff and was "simply stringing Plaintiff and [Blackacre] along to 'earn' the $50,000 which it had fraudulently obtained under false pretenses during the Term Sheet process." *Id.*

In October 2023, Plaintiff sued Urban Standard and the entity Urban Standard created for the purpose of the contemplated loan, USC 28 Saginaw. In total, Plaintiff brings five counts against all Defendants: (1) breach of contract and breach of implied covenant of good faith and fair dealings; (2) promissory estoppel; (3) detrimental reliance; (4) statutory conversion under MICH. COMP. LAWS § 600.2919a; and (5) fraud in the inducement. ECF No. 1. One month later, Urban Standard removed the case to federal court, ECF No. 1, and then filed a motion to dismiss for lack of personal jurisdiction, ECF No. 4.

## II. STANDARD OF REVIEW

"When sitting in diversity, a federal court may exercise personal jurisdiction over an out-of-state defendant only if a court of the forum state could do so." *Blessing v. Chandrasekhar*, 988 F.3d 889, 901 (6th Cir. 2021). Personal jurisdiction

may be general or specific. *See Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 501 (6th Cir. 2020).

"General jurisdiction exists when the defendant's affiliations with the forum state are 'so continuous and systematic as to render the defendant essentially at home' there." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy." *Id.* at 502 (quoting *Goodyear*, 564 U.S. at 919). For specific jurisdiction to exist, (1) the defendant must be covered by the forum state's long-arm statute, and (2) exercising personal jurisdiction over the defendant must comport with due process. *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012).

When considering a motion to dismiss for lack of personal jurisdiction a district court may either (1) decide the motion on affidavits alone; (2) permit discovery to help rule on the motion; or (3) conduct an evidentiary hearing to decide any remaining factual questions. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). When the court relies solely on affidavits, the plaintiff need only make a *prima facie* showing that personal jurisdiction exists to defeat a motion to dismiss. *Id.* In such a scenario, the pleadings and affidavits are read in the light most favorable

to the plaintiff. *Id.* at 1459.

### III. ANALYSIS

Here, Plaintiff concedes that this Court does not have general jurisdiction over Defendants. *See* ECF No. 7 at PageID.152 (noting Defendants are not "at home" in Michigan). Thus, the only issue is whether this Court has specific jurisdiction over Defendants.

### A. Michigan's Long-Arm Statute

Michigan's long-arm statute addresses the state's reach over out-of-state corporations:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within the state.
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

MICH. COMP. LAWS § 600.715.

Under § 600.715(1), "the statutory phrase 'transaction of any business within the state,' . . . is broad." *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 667 (6th Cir. 2023).

Indeed, "[t]he word 'any' means just what it says. It includes 'each' and 'every.'" *Sifers v. Horen*, 188 N.W.2d 623, 624 n.2 (Mich. 1971) (citing *Harrington v. Inter-State Bus. Men's Accident Ass'n*, 178 N.W. 19 (Mich. 1920), and *Gibson v. Agric. Life Ins. Co. of Am.*, 276 N.W. 450 (Mich. 1937)). Therefore, "even the slightest act of business in Michigan" is enough for jurisdiction under the long-arm statute. *Sullivan*, 79 F.4th at 667 (6th Cir. 2023) (quoting *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988)). Even so, under this section, the plaintiff's action must *arise from* the defendant's business transaction in Michigan. *Sullivan*, 79 F.4th at 667–68 (6th Cir. 2023) (collecting cases).

Plaintiff argues that Defendants fall under § 600.715(1) because Defendants transacted business in Michigan related to securing the contemplated loan. *See* ECF No. 7 at PageID.154. Defendants respond that it was not Defendants, but a third-party broker, that solicited business in Michigan. ECF No. 8 at PageID.178. Although it appears that a third-party loan broker initially connected Plaintiff and Defendants, the record at this juncture reflects that Defendants continually and proactively pursued Plaintiff's business by not only communicating with Plaintiff during the negotiation process, but also by *traveling to Michigan* to visit the Michigan Property that was to be the collateral for the contemplated loan. These circumstances satisfy the "transaction of any business within the state" requirement. *See Five Bros. Mortg. Co. Servs. & Securing, Inc. v. McCue Mortg. Co.*, No. 329888,

2017 WL 104539, at *5 (Mich. Ct. App. Jan. 10, 2017) (finding "defendant's performance under the contract, and its communication with and submission of payments to plaintiff in Michigan, is sufficient to satisfy" the transaction-of-any-business requirement). And, this Court has no trouble concluding that Plaintiff's claims *arise from* the specific business Defendants transacted in Michigan. Indeed, Plaintiff's claims arise from the very business transactions explained above.

In sum, Michigan's long-arm statute encompasses Defendants here, so the first specific-jurisdiction factor is satisfied.

### B. Due Process

Turning to the second specific-jurisdiction factor, "[t]he Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). Courts apply "a three-part test to determine whether the exercise of personal jurisdiction . . . comports with constitutional due process." *AlixPartners LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016). "First, the defendant must *purposefully avail* himself of the privilege of acting in the forum state or causing a consequence in the forum state." *Id.* (quoting *Air Prods. and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007)). Second, the claims "'must arise out of or relate to the defendant's contacts' with the forum." *Ford*, 592 U.S. at 352 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San*

*Francisco Cnty.*, 582 U.S. 255, 272 (2017); *see also AlixPartners*, 836 F.3d at 549. Third, "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *AlixPartners*, 836 F.3d at 549–50 (quoting *Air Prods.*, 503 F.3d at 550).

### 1. Purposeful Availment

The Due Process Clause first requires that the defendant "take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.' The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford*, 592 U.S. at 359 (alteration in original) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)). This requires a showing "that the defendant deliberately reached out beyond its home—by, for example, exploi[ting] a market in the forum State or entering a contractual relationship centered there." *Id.* (cleaned up); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). The purposeful-availment requirement prevents the exercise of jurisdiction over a defendant "solely as a result of . . . the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). "'It is the **quality** of [the] contacts,' and not their number or status, that determines whether they amount to purposeful availment."

*CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996) (alteration in original) (quoting *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1119 (6th Cir. 1994)).

Defendants allege they did not purposefully avail themselves of any business in Michigan because "the Bridge Loan that is at issue in this lawsuit was referred to the Defendants by a New York-based loan broker, and was not obtained by any solicitation efforts of the Defendants of the Plaintiff." ECF No. 4-2 at PageID.81. But Plaintiff counters that after the initial introduction, Defendants *deliberately* reached out to Plaintiff to solicit their business by (1) communicating through Plaintiff's Michigan office about providing a loan for a Michigan property and (2) even sending representatives from New York *to Michigan* to help close on the loan for the Michigan property. ECF No. 7-2 at PageID.166; *see also* ECF No. 1 at PageID.40 (listing four Urban Standard agents who planned to travel to Michigan to visit the property and surrounding area).

At this stage, it appears that Defendants did indeed purposefully avail themselves of the privilege of conducting business in Michigan. After a third party introduced Plaintiff to Defendants, Defendants deliberately reached out to Michigan to solicit Plaintiff's business by exchanging a term sheet and communicating with Plaintiff to negotiate a contract which would create a continuing relationship between the parties—one that would have been centered in Michigan. *See* ECF Nos.

7-2; 7-3. Standing alone, that might not have been enough for purposeful availment. *See SRS Techs., LLC v. Nat'l Minority Trucking Ass'n, Inc.*, No. 17-13207, 2018 WL 925847, at *4 (E.D. Mich. Feb. 16, 2018) (finding defendant did not purposefully avail itself of the forum state where defendant did not solicit business from Plaintiff in the forum state *and* did not visit the forum state to negotiate contract terms); *Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147, 151 (6th Cir.1997) (finding the acceptance of a single unsolicited sales offer did not constitute the defendant's "reaching out" to Michigan to establish "continuing relationships and obligations."). But here, there is more. *After* executing the Term Sheet, the Parties engaged in substantial negotiations relating to the loan for improvements to the Saginaw Street Property—located in Michigan—and Defendants even sent three employees to Michigan in September 2023 to visit the Saginaw Street Property and surrounding area, further demonstrating that Defendants purposefully availed themselves of a business relationship and investment *intentionally centered in Michigan*. *See* ECF No. 7-2 at PageID.165–66. It is also notable that had the loan closed, the contemplated terms would have provided that any disputes related to the Saginaw Street Property would be litigated in Michigan, *see id.* at PageID.166. Further, had Plaintiff defaulted on the loan, Defendants would have had the right to first mortgage on the Saginaw Street Property in Michigan *and* first priority pledge

of all equity interests in Plaintiff, a Michigan limited liability corporation. *See* ECF No. 1 at PageID.29.

Accordingly, having "undertake[n] a holistic analysis of the totality of the circumstances surrounding the prior negotiations and contemplated future consequences . . . and the parties' actual course of dealing when determining if the defendant purposefully established minimum contacts in the forum," this Court finds that purposeful availment is satisfied. *Baker v. Bensalz Prods., Inc.*, 480 F. Supp. 3d 792, 804 (S.D. Ohio) (citing *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 795 (6th Cir. 1996)).

### 2. Arising From or Relating To

The Due Process Clause next requires that the plaintiff's claim "'arise out of or relate to the defendant's contacts' with the forum" state. *Ford*, 592 U.S. at 352 (quoting *Bristol-Myers*, 582 U.S. at 272). That is because the Constitution requires "an affiliation between the forum and the underlying controversy." *Id.* (quoting *Bristol-Myers*, 582 U.S. at 272); *see also MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 903 (6th Cir. 2017) ("This requires that [defendant]'s contacts be 'related to the operative facts of the controversy.'") (quoting *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)). "[T]his is a 'lenient standard,' requiring only that the cause of action have a 'substantial connection' to the defendant's activity in the state." *MAG IAS*, 854 F.3d at 903 (quoting *Bird*, 289 F.3d at 875).

This factor is easily satisfied. Indeed, Plaintiff's claims are alleged to be a direct result of the representations made and actions taken by Defendants in the course of negotiating contract terms for a loan to improve the Saginaw Street Property. *See generally* ECF No. 1 at PageID.13–23. Thus, Plaintiff's claims arise out of or relate to Defendants' contacts with the forum state.

### 3. Reasonableness

Finally, the Due Process Clause requires courts to consider whether the exercise of personal jurisdiction over a defendant is reasonable—that is, whether it "comports with traditional notions of fair play and substantial justice." *CompuServe*, 89 F.3d at 1267–68 (internal quotations omitted) (quoting *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1117 (6th Cir. 1994)). When a defendant "avail[s] himself of the privilege of conducting business" in the forum state and "his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King*, 471 U.S. at 476. In this way, when courts "find purposeful availment and relatedness, 'an inference arises that this third factor is also present.'" *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 674 (6th Cir. 2023) (quoting *CompuServe*, 89 F.3d at 1268). Courts "must consider several factors in this context, including 'the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient

resolution of controversies.'" *CompuServe*, 89 F.3d at 1268 (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169–70 (6th Cir. 1988)).

Defendants do not argue that an exercise of personal jurisdiction over them would be unreasonable, but instead merely state that this Court "need not reach this prong" because "Defendants have no suit-related contacts with Michigan." ECF No. 4 at PageID.76. But, as explained above, Defendants *do* have suit-related contacts with Michigan sufficient to establish the first two factors, so "an inference arises that this third factor is also" satisfied. *CompuServe*, 89 F.3d at 1268. Although Defendants would have to travel to litigate Plaintiff's claims in Michigan, it is a domestic corporation and Defendants have so far demonstrated their ability to litigate in Michigan by removing the case to federal court, *see* ECF No. 1, timely responding to show-cause orders, *see* ECF Nos. 3; 6, and filing the instant motion to dismiss, *see* ECF No. 4. Plaintiff is seeking relief from the harm it alleges Defendants caused it by breaching a contract and making fraudulent statements to induce Plaintiff to sign the contract, and Michigan has an interest in providing Plaintiff a forum. In sum, this is not the "unusual case" where the exercise of personal jurisdiction would be unreasonable. *Theunissen v. Matthews*, 935 F.2d 1454, 1461 (6th Cir.1991).

Accordingly, having determined that Plaintiff has made a *prima facie* showing that this Court may exercise personal jurisdiction over Defendants, Defendant's Motion to Dismiss, ECF No. 4, will be denied.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 4, is **DENIED**.

**This is not a final order and does not close the above-captioned case.**

/s/Susan K. DeClercq
SUSAN K. DeCLERCQ
United States District Judge

Dated: 9/9/2024